THE CINCINNATI STREET RAILROAD COMPANY AND OTHERS
*v.* RICHARD SMITH ET AL.

1. The application for an injunction, in pursuance of the provisions of section 159 of the municipal code, may be made by the city solicitor in the

Cincinnati Street Railroad Co. et al. *v.* Smith et al.

name of a tax-payer of the corporation, with his consent, without it being made to appear that he had been requested in writing by the tax-payer to do so.

2. Contracts made by the council, granting to street railroad companies easements in the streets of the city, are contracts made in behalf of the city, within the meaning of section 159.

3. Under the provisions of the municipal code, the city council is not authorized to pass an ordinance giving to street railroad companies the exclusive right to maintain and operate such railroads upon a street. or to grant the right to construct such railroads on streets to be designated, to such corporation or company of individuals as will bid "the lowest price of commutation tickets in packages," the law requiring such grants to be let to the one that "will agree to carry passengers at the lowest rate of fare;" and where an ordinance contains such unauthorized provisions, and they are so connected with authorized provisions that their separation is impracticable, the whole ordinance is invalid.

MOTION for leave to file petition in error to reverse the judgment of the Superior Court of Cincinnati.

The petition is as follows:

Plaintiffs state that they are tax-payers of the said city of Cincinnati, and that it is a part of the duty of the solicitor to "apply to a court of competent jurisdiction for an order or injunction to restrain the misapplication of the funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing the same, or which was procured by fraud or corruption."

That by an ordinance of the common council of said city, passed March 28, 1873, entitled "an ordinance prescribing the terms and conditions of street passenger railroads," it was ordained as follows:

An ordinance prescribing the terms and conditions of street passenger railroads.

SECTION 1.—*Be it ordained by the common council of the city of Cincinnati*, That any corporation or company of individuals organized for the purpose of laying down rails for running street passenger cars, to be drawn by horses or

Cincinnati Street Railroad Co. et al. *v.* Smith et al.

mules, through the streets of Cincinnati, shall be guided, governed, and regulated by the following conditions, and such lawful and reasonable restrictions as council may hereafter pass.

SEC. 2.—*No track laid without the consent of council.*—No corporation or company of individuals shall be permitted to lay down a track, through any of the streets of said city, without first having obtained the consent of the city council, designating the corporation or company of individuals to whom the privilege is granted, and the streets through which said line shall run.

SEC. 3.—*Gauge of track not to exceed five feet two inches.*—That the tracks of street railroads hereafter to be constructed may be of any gauge not exceeding five feet two inches for the whole or any portion of a route, as the contractors with the city in each instance may elect. The rails to be of such form as the city civil engineer shall specify, and be laid in pursuance of the directions of said engineer, in such manner as not to impede the ordinary use of the streets, with suitable bridges at all gutters, so as to permit the flow of water under the same, and on such grades as are at the time established, and no motive power except horses or mules shall be used on any road, without the consent of the common council, except during times of heavy snow, when steam may be used for the removal of snow, and during the prevalence of horse epizootic.

SEC. 4.—*Side track and turnouts.*—That any such corporation or company of individuals shall have the right, from time to time, to construct and use side tracks, turnouts, and other facilities for the convenient management of its, his, or their railroad route. *Provided,* that before any side track, turnout, or other facilities shall hereafter be constructed, a plan of the same shall be submitted to and approved by the board of improvements, and remain on record in the office of the clerk of said board, and the side track, turnout, or other facility shall be laid in conformity to such plan, under the direction of the city civil engineer.

SEC. 5.—*To form shorter circuits.*—That whenever it shall

become necessary, for the greater convenience of public travel, to form a shorter circuit, or connect any of the tracks, the company may, after first receiving consent of council, lay said connection or track, by filing with the city clerk the written consent of such proportion of the property holders as may be required by law. *Provided*, all such tracks shall be laid under the direction of the city civil engineer.

SEC. 6.—*To run cars as the business requires.*—That any corporation or company of individuals, to whom any privilege may be granted, shall place and continue upon said road good cars, with all the modern improvements, and such cars as shall be required for their business, for the convenience and comfort of passengers, and run cars thereon as often as the business may require. *Provided*, that all small cars shall have the front platform inclosed, so as to prevent the ingress and egress of passengers, except at the rear end of the car.

SEC. 7.—*Sale of package tickets.*—That any such corporation or company of individuals shall be required to keep for sale by the conductor or driver of each car package tickets of not less than twenty-five for one dollar, to be ready for delivery at all times during the running of the cars, to passengers applying for the same.

SEC. 8.—*To execute a bond, etc.*—That any corporation or company of individuals to whom such privilege may be hereafter granted shall in all respects comply with the direction of the city civil engineer in building said road, and that any corporation or company of individuals shall, before the permission take effect, enter into a bond in the penal sum of fifty thousand dollars, with good and sufficient securities, to be drawn by the city solicitor, and approved by the city auditor, binding themselves and their successors to abide by and perform the stipulations and provisions herein contained.

SEC. 9.—*Advertisements to be made for bids.*—The city auditor shall, when instructed by the city council, advertise for ten days in the official papers of this city, stating the

route or routes which have been designated by council for street railroads, and ask for sealed proposals under this ordinance to construct the same, and the corporation or company of individuals that will bid for the lowest price of commutation tickets, in packages, shall be considered the successful bidder: *Provided*, however, the city council shall be the judges of the bids; and, *provided further*, that this section shall not apply to any extension, heretofore granted, of the track of any street railroad (where the rate of fare is not increased) under existing laws; and, *provided further*, that not more than one line of street railroad shall be granted upon the same street without the consent of the existing company.

Sec. 10.—*Not more than five cents to be charged for fare.*— Any such corporation or company of individuals shall not charge more than five (5) cents for each passenger on any of said roads.

Sec. 11.—*Liable for damages.*—That any such corporation or company of individuals shall be liable for any loss or injury that any person may sustain by reason of any carelessness, neglect, or misconduct of their agents or servants, in the management, construction, or use of said track or roads, and any such corporation or company of individuals shall indemnify and hold the city harmless from any damage that may be claimed by property-holders, or by any person or persons on account of the laying of said track, or in the use, or by reason thereof, or by running the cars thereon. *Provided*, that any excavation made by the city or individuals in the streets under or near the track of any street railroad, for any purpose, shall be made in such manner as not to unnecessarily interrupt the ordinary running of the cars.

Sec. 12.—*Sign the contract within ten days.*—Any corporation or company of individuals, to whom privilege may be granted as aforesaid, shall, within ten days after the passage of a resolution granting such privilege, come forward and sign the proper contract, agreeing to abide by these stipulations, and other lawful and reasonable ordinances

that may be passed hereafter by the city council regulating said roads, and agreeing further to commence said road within thirty (30) days thereafter and completing the same within eighteen months.

SEC. 13.—*Car license.*—Any such corporation or company of individuals having a railroad now in operation shall be required to pay an annual car license of five dollars per car for small cars, and ten dollars for large cars, and the rate of fare to be charged thereon shall not exceed five (5) cents for single cash fare, and tickets in packages of twenty-five for one dollar. *Provided,* that where one or more routes are owned by the same company, and the cars are run continuously thereon, without change over any portion of one or more of said routes, the fare charged by such company shall not exceed five cents, and tickets in packages of twenty-five for one dollar, for any distance such cars shall run; *and, provided further,* that upon any such railroad company filing with the city clerk their written acceptance of the terms of this ordinance, it shall thereupon be operative and binding as a contract between the city of Cincinnati and the company so accepting the same.

SEC. 14. That hereafter, when the right to construct any extension to any street railroad shall be granted, it is hereby made an express condition to every such grant that the corporation or company of individuals receiving the grant shall, whenever the board of improvements or other board charged by law with the care of streets deem it necessary, and without expense to the city, make the crown of each street or part thereof so occupied, a nearly flat, uniform curve from curb to curb, without ditch gutters, and in such manner as to give all vehicles the full use of the roadway up to the face of the curb; and that such change or construction of the crown shall include the paving from curb to curb of each street or part of the street so occupied, and the whole shall be made under the direction and to the satisfaction of the city civil engineer; and on not more than one square of any street shall such change or construction of the crown be made at any one

time. And it is hereby made a further express condition to every such grant that the tracks along the entire route or extension shall be completed within eighteen months after the date of the grant, except as to such portion or portions of any grant where the street or part thereof to be occupied shall be so incomplete as to be unfit for occupancy, in which latter case such track shall be completed within eighteen months after such street or part thereof shall be fit for occupancy.

SEC. 15. That any corporation or company of individuals to whom the privilege shall hereafter be granted to construct and use a street passenger railroad or railroads, or to construct and use an extension to any street railroad, in every such case the corporation or company of individuals receiving such grant shall, without expense to the city, pave and keep in good repair, to the satisfaction of the board of improvements, or other board charged by law with the care of streets, that portion of each and all streets occupied by them, which lies between lines drawn one foot outside and beyond each rail; and in case there be a double track, or more tracks than one, that such corporation or company of individuals shall so pave and keep in repair all of that portion of the street or streets so occupied, which lie between lines drawn one foot outside and beyond the extreme outer rails. And in addition to the above requirements, each corporation or company of individuals using any track or tracks laid under the provisions of this ordinance shall pay annually ten dollars as car license for each and every car used upon said tracks. And in case any corporation or company of individuals, after receiving written notice from the board of improvements, or other board charged by law with the care of streets, shall fail or neglect, for the space of five days, to put in proper repair all or any portion of the route, which is thus required to be kept in repair, then and in any such case the city, by its proper officers, shall repair such route or portion thereof, and collect the cost thereof from such corporation or company of individuals.

SEC. 16.—*Regulations.*—*And be it further ordained,* that the following specifications, regulating the running of street railroads in Cincinnati, be required of each and every company or individual taking out license under the provisions of this ordinance, viz:

1. No car shall be drawn at a greater speed than six (6) miles an hour.

2. While the cars are turning the corners from one street to another, the horses or mules shall not be driven faster than a walk.

3. Cars driven in the same direction shall not approach each other within a distance of three hundred (300) feet, except in case of necessity or accident, when it may be necessary to connect two (2) cars together, and also except at stations.

4. No car shall be allowed to stop on a cross-walk, nor in front of any intersecting street, except to avoid collisions, or to prevent danger to persons in the street.

5. When the conductor of any car is required to stop at the intersection of streets to receive or leave passengers, the car shall be stopped so as to leave the rear platform slightly over the crossing.

6. The conductor and driver of each car shall keep a vigilant watch for all teams, carriages, persons on foot, and especially children, either on the track or moving toward it, and on the first appearance of danger to such teams, or persons, or other obstructions, the car shall be stopped in the shortest time and space possible.

7. The conductor shall forbid ladies and children to enter or leave the cars while in motion.

8. Conductors shall announce to the passengers the names of the streets, or the place wherever the cars cross in connection with any other railroad track.

9. The cars after sunset shall be provided with signal lights.

10. No car shall remain standing at the central or principal depot more than five (5) minutes, excepting at the ferry landing.

11. The cars shall be entitled to the track, and any vehicle upon the track of said company, when any car comes up, shall turn out, so as to leave the track unobstructed; and the driver of any vehicle refusing to do so, when requested by the driver or conductor of any car, shall be liable to a penalty of not exceeding five (5) dollars, on conviction before the police court of Cincinnati, and costs of prosecution; and all fines collected under this section shall be paid into the city treasury, to be appropriated to the school fund.

12. All conductors of cars shall be sworn in by the mayor as private officers, to have police powers while on duty on the cars, or at the stables or stations. *Provided*, that if any person or persons shall have cause to remove any large iron safe, or other large and heavy substance, they shall employ additional help, and be allowed a reasonable time to load and unload the same without being liable to the penalty attached by this section.

13. It shall be the duty of the police to prevent persons and school or other children from hanging upon the sides of the cars, or from throwing stones or other missiles at the cars or through the windows of the same.

14. It shall be the duty of the board of improvements, or other board charged by law with the care of streets, in issuing permits for building or for repairing buildings along the line of any street railroad, to require that all material on the street shall be at a sufficient distance from the track of any such railroad, so that the travel may not be unnecessarily obstructed.

SEC. 17.—*Repealing ordinances.*—This ordinance shall continue and be in force from and after its passage, and the ordinance entitled " an ordinance prescribing the terms and conditions of street passenger railroads within the city of Cincinnati," passed July 1, 1859, and the ordinance entitled " an ordinance regulating the sale of package tickets on street passenger railroads within the city of Cincinnati," passed July 10, 1864, be and the same are hereby repealed.

*Passed March* 28, 1873.

Plaintiffs further state that afterward, on or about the 29th day of March, 1873, the ordinance aforesaid was duly transmitted to Hon. S. S. Davis, mayor of said city of Cincinnati, to be by him approved or rejected; that the mayor aforesaid indorsed upon said ordinance the words and figures following, to wit:

"Approved, April 1, 1873.

" S. S. Davis, *Mayor.*"

" With the understanding that the old companies, should they accept under this ordinance, will keep the streets in repair, as per conditions imposed upon the new companies in this ordinance.          " S. S. Davis, *Mayor.*"

And that he then returned said ordinance to the city clerk; that thereupon said city clerk caused said ordinance to be published the first time, April 12, 1873, and that the time required by law for publication will expire on Monday, April 21, 1873.

That, on April 14, 1873, each of the railroad companies, defendants hereto, by its president, and E. Gest, manager of route No. 9, did tender to the city clerk its acceptance of the terms of the ordinance aforesaid, but that said city clerk declined to receive such acceptances, for the reason, among others, that the time required by law for the publication of said ordinance had not expired.

That the several railroad companies, defendants hereto, and Erasmus Gest, will again tender, and J. F. Blackburn, clerk of the city aforesaid, will receive, on behalf of the city, acceptances of the terms of this ordinance, set forth above, unless restrained by the court. Plaintiff submits to the court that the ordinance of the common council above recited is in contravention of the laws governing said corporation; that the execution or performance of the contract contemplated by the terms of said ordinance will be an abuse of said city's corporate powers; that the indorsement upon said ordinance by the mayor, as aforesaid, does not veto or qualify any part or the whole of the same; that said ordinance is in conflict with the terms of the contracts heretofore entered into with the city by the railroad com-

panies, defendants hereto, and the manager or proprietor of Route No. 9, and in which these plaintiffs, as tax-payers, have valuable interests; and that the adoption of said ordinance, or the execution of any contract in pursuance of the terms and provisions of the same, or the exercise of any duties, privileges, or rights, under or by virtue of said ordinance, will work upon these plaintiffs, as tax-payers, lasting and irreparable injury:

Wherefore, on the 18th day of April, an application was made to the city solicitor by the parties named in the heading of this case to enjoin the acceptance of the terms of the ordinance aforesaid, and the city from executing or in any way recognizing or enforcing said ordinance.

Wherefore the solicitor notified plaintiffs that he would apply for the injunction as requested.

Plaintiffs, therefore, pray that the court will allow an injunction as follows, restraining the railroad companies and Erasmus Gest, and each of them, defendants hereto, from again tendering to the city of Cincinnati or its clerk acceptances of the terms of the ordinance aforesaid, and from exercising any privileges thereunder; the city clerk from receiving or in any way recognizing such acceptance of any railroad company whatever; the city from executing, enforcing, or in any manner recognizing the ordinance aforesaid. They further pray that, upon final hearing of this cause, the acceptances heretofore tendered to the city clerk as set forth above, or any rights that may have been thereby acquired, may be declared null and void; that such injunction may be made perpetual if it be found proper, or such other and further relief granted as may be found equitable and just.

By JOHN W. WARRINGTON,
*Solicitor for City of Cincinnati.*

*State of Ohio, Hamilton County, ss.*

Richard Smith, plaintiff herein, being first duly sworn, says that the facts contained in the foregoing petition are true.

RICHARD SMITH.

Sworn to before me, and subscribed in my presence, this 19th day of April, 1873.

[SEAL.]                                    A. E. CRAMER,
                          *Notary Public, Hamilton Co., O.*

On the filing of the petition, a temporary injunction was allowed. The defendants separately demurred to the petition on the grounds:

1. That the plaintiffs have not legal capacity to sue.

2. That the facts stated are not sufficient to constitute a cause of action.

On motion of the defendants at special term the questions of law arising on the demurrers were reserved to the general term for decision, where the demurrers were overruled, and the injunction made perpetual.

This is a proceeding to obtain a reversal of the decree in the superior court in general term on the ground that there was error in overruling the demurrer.

*E. A. Ferguson,* for plaintiffs in error.

*Peck, Gerard & Molony,* for defendants in error.

GILMORE, J.   The suit was commenced in the court below by the city solicitor, in the name of certain tax-payers of the corporation, and the first question raised by the demurrer to the petition is: Had the plaintiffs legal capacity to sue?

The suit was brought under section 159 of the municipal code, which reads as follows: "He (the city solicitor) shall apply to a court of competent jurisdiction for an order of injunction to restrain the misapplication of the funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing the same, or which was procured by fraud or corruption.".

Section 160, as amended April 18, 1870, is also necessary to the decision of this question. It reads as follows: "In case the solicitor shall fail, upon the request of any

of the tax-payers thereof, to make the application provided for in the preceding section, it shall be lawful for such tax-payer to institute a suit in his own name, on behalf of the corporation; provided that no such suit or proceeding shall be entertained by any court until such request shall have first been made in writing."

Taking these two sections together, it is manifest that the principal object the legislature had in view was to provide convenient remedies for the protection of the tax-payers against the violations of the provisions of section 159 by the corporation.

The sections do not provide remedies that were previously unknown. Courts of equity had long taken jurisdiction and granted injunctions in such cases when properly presented by interested individuals, whose rights were put in jeopardy by the illegal or unauthorized acts, or threatened acts, of municipal corporations. The sections were therefore simply intended to regulate the practice in such cases to this extent, that applications for injunctions in such cases should be made by the city solicitor, and should not be made without his knowledge. The form of action is not prescribed, but an adversary proceeding is evidently contemplated, and the latter clause of section 605 of the code of civil procedure makes the provisions of that code applicable to such cases. Section 25 requires the action to be brought in the name of the real parties in interest, and section 37 provides that when the question is one of a common or general interest of many persons, one or more may sue or defend for the benefit of all.

The action was therefore well brought, under the code, in the name of some of the real parties in interest, who sued for the benefit of all, and it must be sustained unless section 159 imperatively requires the action to be brought in the name of the city solicitor alone. We are all of the opinion that the law did not require the action to be so brought in the case before us. If the tax-payers were willing to assume the responsibilities of plaintiffs in the case, it was proper for the city solicitor to permit them to

do so, and he complied with the requirements of the law in this respect, when he acted as attorney for them in his official capacity. If, under section 160, the tax-payer could make the application in his own name *without* the consent of the city solicitor, it would be a strange construction of these sections to say that he could not maintain the action in his own name under section 159 *with* the consent and assistance of the city solicitor. The latter clause of section 160 is merely a limitation upon the right of the tax-payer to sue in his own name without first requesting the city solicitor to act in his official capacity as his attorney in the proposed action.

The demurrer in this respect was properly overruled.

2. The second ground of demurrer is, that the petition does not state facts sufficient to constitute a cause of action.

The action was brought to enjoin (1) an abuse of corporate powers by the city, and (2) the execution or performance of a contract about to be made in behalf of the corporation in contravention of the laws or ordinances governing the same, it not being claimed that the facts stated in the petition show that there is to be any misapplication of corporate funds.

Following the order in which objections are made in argument by counsel for plaintiffs in error, the first stated is in effect this: That section 159 does not refer to or include contracts in general, but is confined to contracts made in *behalf* of the city, in contravention of the laws and ordinances governing the same, and that a contract formed by the acceptance of a grant made by the city of an easement in its public streets, is not a contract made in behalf of the city.

This objection is made upon the assumption that the city has no property right in the public streets. And it is contended, that such property being in the public, the grant is a contract made in behalf of the public, in the making of which the city does not act in its own behalf as a corporation, but as the agent of the public, in the exercise of

a. governing power of the state, delegated to it in the particular instance to be executed in the mode authorized.

The correctness of this assumption may be determined by the provisions of the statutes on the subject.

Section 6 of the act to "provide for the recording of town plats," (S. & C. 1483) among other things provides "that all proprietors of lots or grounds in any city or town corporate in this state, who have subdivided or laid out, or who shall hereafter subdivide or lay out the same in lots for sale, shall cause true and accurate maps or plats thereof to be recorded in the office of the recorder of the county; which maps or plats so to be recorded, shall set forth and describe with certainty all grounds laid out or granted for streets, alleys, ways, commons, or other public uses; . . . and such map or plat so recorded, shall be deemed a sufficient conveyance to vest the fee of the parcels of land therein set forth and described or intended for streets, alleys, ways, commons, or other public uses, in such city, or town corporate, to be held in the corporate name thereof, in trust to, and for the uses or purposes so set forth and expressed or intended." This vests the fee of the streets in the corporation, subject to the right of the state to direct the mode of administering the trust. So far as the state has assumed to do this it is binding on the corporation.

The 439th section of the municipal code provides: "The council shall have the care, supervision and control of all public highways, bridges, streets, avenues, alleys, sidewalks, and public grounds within the corporation, and shall cause the same to be kept open and in repair, and free from nuisance." This is substantially a re-enactment of the provisions of former laws.

It seems to us that the provisions of these sections negative the claim that the proposed contract between the city and the defendant street railroad companies, when the easement granted in the streets is accepted by them, will not constitute a contract made in *behalf* of the city. The city holds the fee of the streets in trust for the uses

intended, and the care, supervision and control of them is expressly imposed upon the council. The 411th section of the municipal code confers upon council the power to make the grant in question in the following language: " The council, on the written application of any corporation, individual or individuals, desiring to construct any street railroad in any city or incorporated village, before the work of constructing such road be commenced, shall, by ordinance, grant permission therefor, and prescribe the terms and conditions upon, and the manner in which such road shall be constructed and operated, and the streets and avenues which shall be used therefor."

These sections taken together show that the state, in its sovereign character, has reserved no property interest in the streets in question. The revenues and profits that are to accrue from the use of the streets in the mode contemplated will be the private property of the city, in which the state has no interest whatever.

Under the plain provisions of the sections quoted, authorities need not be cited to show that the proposed contract. if consummated, would be one made in behalf of the corporation.

3. It is next contended that the averments of the petition do not show that the ordinance in question, and the proposed action of the city and the street railroads named under it will constitute an " abuse of its corporate powers " by the city, or that it is a contract in contravention of the laws governing it.

Without stopping to examine the language of the petition, we are content with saying that its averments are sufficient in both respects to maintain the action if it is found that the ordinance, which is made part of it, contains provisions that contravene the laws governing the city; in which event, the court was authorized to enjoin the operation of the ordinance, and also to enjoin the acceptance of the grant or the performance of the contract resulting therefrom; notwithstanding it might not have

been authorized to have interfered to prevent the passage of the ordinance.

The effect of the acceptance of the terms of the ordinance by the then existing street railroad companies, is provided by section 13 of the ordinance, as follows: " That upon any such railroad company," *i. e.*, any company having a railroad in operation, " filing with the city clerk their written acceptance of the terms of this ordinance, it shall thereupon be operative and binding as a contract between the city of Cincinnati and the company so accepting the same."

It is suggested by counsel for plaintiffs in error that this does not require an acceptance of the " ordinance" generally, but of its " terms," meaning those which, when accepted, would become the stipulations of a contract. We find that the ordinance contains many provisions that might be made the stipulations of a contract, in connection with many others that could not be made such; and these are so intermingled throughout the ordinance, without any attempt to distinguish the one from the other by any system, that it would be very difficult to separate or define them. In the view that we take of the case, it is unnecessary to attempt to separate or classify the provisions of the ordinance in these respects. It may be said, however, that there is no valuable right granted or conferred by the ordinance, which, when accepted by the existing companies, would not be claimed, and perhaps held to be within the terms of the contract; and there is no power reserved to the council to modify or change any of the contract stipulations embraced in the ordinance.

If any of the terms of the ordinance, which, when accepted, would become the stipulations of a contract, are in contravention of the laws governing the corporation, the performance of the contract, as to such stipulations, will be enjoined; and if such unauthorized stipulations are so connected with authorized provisions that their separation is impracticable, then the whole ordinance will be declared invalid. The same result will follow if the subject-matter

of the unauthorized stipulations is of such character that the court can not say that the council would have passed the ordinance without such provisions being contained in it.

The last clause of section 9 provides, " that not more than one line of street railroad shall be granted upon the same street without the consent of the existing company." This clause is contained in a proviso to the section ; but by its terms it would apply to companies existing at the time of its acceptance as well as to those created after the passage of the ordinance. This clause is clearly illegal, as it gives to private persons exclusive privileges in the use of the streets. *The State* v. *The Cin. Gas Co.*, 18 Ohio St. 292.

Again, the same section provides that " The city auditor shall, when instructed by the city council, advertise for ten days in the official papers of the city, stating the route or routes which have been designated by the council for street railroads, and ask for sealed proposals, under this ordinance, to construct the same, and the corporation or company of individuals that will bid for the lowest price of *commutation tickets, in packages*, shall be considered the successful bidder." This provision is in contravention of law, in two respects. Sec. 412 of the municipal code requires the notice provided for to be three weeks, instead of ten days, and also requires such grants to be let to the one that " *will agree to carry passengers* . . . *at the lowest rate of fare.*" These illegal provisions are of great importance in the general scheme for the regulation of street railroads sought to be introduced by the ordinance, and contract that was to result from its acceptance. The use of the streets, and the rates of fare, are matters of primary importance to street railroad companies. The means and the end are involved in them. Other terms of the ordinance which would become parts of the contract, on acceptance, must, in a greater or less degree, depend upon or relate to these illegal provisions. The illegal and legal provisions of the ordinance being thus connected, we do not feel called upon to attempt their separation. If the illegal provisions were matters merely

incidental to the purposes of the ordinance they might be stricken out without impairing its effect, but the illegal matters referred to above are not of this character. It can not be said that, in the absence of the illegal provisions, the council would have passed the ordinance. On account of these illegal provisions, the demurrer to the petition was properly sustained, and the judgment and order of the court below must be sustained.

There are several other provisions of the ordinance that are very objectionable, on the ground that they would tend to create a monopoly in the existing companies, but the decision is placed upon the other ground.

*Motion overruled.*