## RENEWAL OF STREET RAILWAY GRANT MUST BE TO THE ORIGINAL COMPANY.

Circuit Court of Cuyahoga County.

WM. M. RAYNOLDS, AS A TAX-PAYER, V. THE CITY OF CLEVELAND.

Decided, December 1, 1905.

*Street Railways—Municipal Corporations—Renewal of Grant Must be to Original Corporation.*

The power of a municipal corporation to renew a grant of permission to use the streets of the municipality for street railway purposes under the provisions of Section 1536-184, Revised Statutes, is limited to the renewing of such grant to the original party thereto, and such renewal may not be made to a stranger to the original contract.

*C. W. Collister*, for plaintiff.

*N. D. Baker* and *Garfield, Howe & Westenhaver*, contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

This cause comes into this court on appeal, and is a tax-payer's action wherein the main relief sought is an injunction prohibiting the Forest City Railway Company from exercising the right, attempted to be granted to it by the ordinance of the city of Cleveland of January 11, 1904, to use, for street railway purposes, certain portions of Erie street, Central avenue, and Quincy street in said city, from and after March 22, 1905, and to acquire for the same purposes the Cleveland Electric Railway Company's fixed property then and now located on said streets.

It is claimed that said ordinance is void, as being an abuse by the city of its corporate powers in three particulars, to-wit:

1. That it is a violation of the city's subsisting contract obligations to the Cleveland Electric Railway Company with respect to said streets, by attempting prematurely to terminate the same;

2. That it provides for the taking of the Cleveland Electric Railway Company's property on said streets without due process of law; 3. That it attempts to renew the city's grant of

permission for the use of said street for street railway purposes to a corporation which is a stranger to the original grant.

For convenience we shall consider the last claim first.

The power, which the city has sought to exercise, is defined in the last clause of Section 1536-184 of Bates' Annotated Statutes:

"No corporation, individual or individuals, shall perform any work in the construction of a street railroad, until application for leave is made to the council in writing, and the council by ordinance shall have granted permission, and prescribed the terms and conditions upon, and the manner in which the road shall be constructed and operated and the streets and alleys which shall be used and occupied thereof, but the council may renew any such grant as it expires upon such conditions as may be considered conducive to the public interest."

The plaintiff contends that the renewal of a grant can only be made to a party to the original grant, this being the ordinary and natural meaning of the words used in the statute, and in accord with the purpose of the Legislature, frequently manifested to favor the unification of different street railway routes in the same city into a system that will enable passengers, by means of transfers and without additional fare, to ride whithersoever they will upon such system, irrespective of the termini of its original or constituent routes. And because the length of such original routes is apt to be rendered inadequate by reason of the city's natural growth and spread, and because the grants for such original routes may expire at different times, the Legislature has provided for the extension of routes and for the renewal of grants by a city, without its having to jeopardize the unity of its street railway system by a general summons to the bidding post.

In other words, plaintiff's contention is that the very reason for permitting non-competitive extensions and renewals is to enable cities to encourage and preserve the unity of their respective street railway systems for the convenience of the public.

The defendants, however, claim that Section 1536-184 is not a donation but a mere limitation of power, and that the full

effect of the sentence, "But the council may renew any such grant at its expiration upon such conditions as may be considered conducive of public interest," is exhausted when it is construed to mean that the restrictions imposed by the preceding sentence shall not be held to apply to the situation at the expiration of the grant.  It is suggested also that a city's grant of permission to use its streets for street railway purposes does not, of itself, constitute a contract implying a particular grantee, even though it necessarily results in such a contract; but that the granting of permission is essentially impersonal, and may inure to anyone qualified to make use of it, though, in fact, it does inure only to the one ascertained by the selective process provided in Section 1536-185 of Bates' Annotated Statutes of Ohio.  And if this be true, it is argued further, that the renewal of such grant of permission is likewise impersonal in its nature and may inure to the former grantee, or to a stranger, as the city may elect.  In other words, it is claimed that a grant, or renewal, is a mere right or *res*, and not essentially a relation between parties.

And it is urged that this construction is not only warranted by the letter of the law, but that it is clearly in the public interest; for otherwise a city's existing street railway system has an unfair advantage in negotiating the terms and conditions of renewals.  But if the law may be construed to mean that a city in providing for the renewal of an expiring grant is given a free hand for negotiation as to both terms and parties, it may drive a better bargain in its attempt to secure better terms and conditions without sacrificing the unity of the existing system or producing an interreguum, unless and until the latter becomes the more desirable course for the public interest.

Before resorting to considerations of this sort in aid of our interpretation of this statue, we must first consider whether its meaning is fairly open to doubt.  At the outset it may be said that we entertain no doubt that Section 1536-184 is to be construed as a donation of power to municipal corporations rather than as a limitation of plenary power elsewhere donated.  It is true that Sections 1536-66 and 1536-131 of Bates' Annotated Ohio

Statutes confer upon municipal corporations plenary power of control over their streets and vest in them the fee thereof, in trust for and to the use of the public for street purposes subject to the right of the state to direct the mode of administering that trust, or even to administer it for itself. So far as the state has undertaken to do this, its action is, of course, binding on the corporation. And it has so undertaken with respect to certain phases of the general street purpose, notably in the case of the right of the telephone companies to use city streets. This right the state has seen fit to confer by direct grant upon the companies themselves, without the agency or even the consent of its municipal corporations. *Farmer* v. *Telephone Co.*, 72 O. S., 526; *State* v. *Telephone Co.*, 72 O. S., 60; *Zanesville* v. *Zanesville Telegraph & Telephone Co.*, 64 O. S., 67.

For reasons hereinafter more clearly appearing, we have reached the conclusion that, in a somewhat analogous manner, the state has also excepted from its general grant to municipal corporations of the power of control over their streets, that other phase of the general street purpose here under consideration, viz: the use thereof for street railway purposes. And Sections 1536-184 *et seq.*, operate by way of a new and distinct grant of power to municipal corporations to deal with that subject to the extent and in the manner therein prescribed.

The fact that, in the exercise of that power, they may contract with street railway corporations as to the terms and conditions of the latter's use of the streets, makes possible paving, sprinkling and the like. But Sections 1536-184 *et seq.*, can not properly be construed as mere limitations on the general power conferred by Sections 1536-66 and 1536-131: This we take to be the true bearing of the decision in *Cincinnati Street Railway et al* v. *Smith et al*, 29 Ohio State, 291. And hence we must consider the last clause of Section 1536-184 not as a determination of the force of previously prescribed limitations, but as a further donation of power to municipal corporations, to deal with the subject of renewal grants.

The nature of the power thus conferred is a nearly related question of equal if not greater difficulty. What is it that the

city is empowered to grant, as regards the use of its streets for street railway purposes?

If a corporation organized for street railway purposes under the laws of Ohio can be deemed to derive its interest in the public easement of city streets and its power to construct and operate a street railroad thereon, from the city itself, then clearly the city's grant of such interest and power must imply a grantee as well as a grantor. The relation of parties is in that event an element necessarily involved, and the action of the city is clearly not impersonal in its nature, inuring merely to whom it may, but a relation wherein a grantee is as essential as a grantor.

On the hearing, however, one of the learned counsel for plaintiff pressed upon our attention a different interpretation of the laws of Ohio with respect to the general relations subsisting between street railway and municipal corporations, respectively in this state—an interpretation which, indeed, was urged not to this point, but to the one already discussed. As already intimated, we conceive this may have an important bearing upon the point now under consideration. It is this, that a corporation organized for street railway purposes in this state may be deemed to derive its interest in the public easement of city streets and its power to construct and operate a street railroad thereon from the state itself under Revised Statutes, Section 3437, and an interest and power, the enjoyment of which is, however, conditioned upon the city's yielding its permission therefor under the regulations prescribed by law. See *Simms* v. *Street Railroad Co.*, 37 O. S., 556, 5th paragraph of the syllabus. *State, ex rel Taylor,* v. *Columbus Railway Company*, 24 C. C., 609, 1st paragraph of syllabus. But see also *Cincinnati Street R. R. Co.* v. *Smith*, 29 O. S., 306; *Citizens' Electric Ry. Co.* v. *Commrs.*, 56 O. S., 1.

We have been much impressed with this view, and with the suggestion that, although the granting of such permission by a city is so regulated by law that it must result, if granted at all, in the city's assumption of contract relations with the successful applicant, who is ascertained to be such by the selective process already mentioned, and to whom alone such permission can inure,

yet this permission, being the essential thing, may be deemed to be in its nature impersonal, and the resultant contract relations merely an adventitious circumstance. The consent of the municipality would thus be assimilated to the consents of abutting owners. On this view, is the permission which the city grants, in its essence, a mere assent to the use of certain streets for street railway purposes by whoever may duly be authorized to exercise such use; or, is it a permission the award of which necessarily implies a definite grantee? If it were an original question, we should find its solution fraught with some doubt and uncertainty; but we are constrained to regard it as settled and put beyond our power to re-examine, by the decision of the Supreme Court of Ohio, in *State, ex rel,* v. *Bell,* 34 O. S., 194. That case construes Sections 411 and 412 of the then existing municipal code. Section 411 afterwards became Section 2501 of the Revised Statutes. Section 412 afterwards became Section 2562 of the Revised Statutes, which has been repealed and is now replaced by Section 1536-185 of Bates' Annotated Statutes. The alterations that have meanwhile taken place in these sections do not, we think, alter the construction to be placed upon them. The syllabus of *Bell, ex rel,* v. *State,* is as follows:

"1. Under Sections 411 and 412 of the municipal code (66 Ohio L., 217; 67 Ohio L., 77), a grant by the council of a municipal corporation to build a street railroad must be made by ordinance directly to a corporation, individual, or individuals to be therein named; and the authority to make the grant can not be delegated by the council to any officer or board.

"2. The consent of property owners provided for in the act of 1866 (63 Ohio L., 55; S. & S., 137), as amended in 1868 (65 Ohio L., 112; S. & S., 139), to the construction and operation of a new street railroad, is not required since the amendment of Section 412 of the municipal code (67 Ohio L., 77), and the consent mentioned in the last mentioned section, by whomsoever obtained, inures to the benefit of the lowest bidder."

In the opinion by Okey, J., it is said:

"When all these preliminary steps are taken and facts ascertained, that is, when, on such application, council has fixed the terms and condition on which a railway may be constructed and operated, and notice has been given, bids received, the low-

est bidder as to fares ascertained, the board of public works assents to the grant, and such lowest bidder complies with the terms and condition prescribed then, and not until then, the council may pass the ordinance granting the right, as provided in 412. And that ordinance is not a general authority inuring to the benefit of the company which, or person who, may thereafter receive the award to construct and operate the railway; but the grant by the council directly to the corporation to which, or the individual to whom, the contract is then awarded. There can, in such case, be no grant without a grantee expressly named therein.

"This being the view of the Supreme Court concerning the nature of the grant made by a municipal corporation, we are bound to hold that a renewal of such grant, like the renewal of a note or of a lease, must be made to and with the opposite party to the contract, and not to or with a stranger, and that the renewal, in this case, being an attempt to deal with a stranger to the original grant, is therefore void."

It thus becomes unnecessary to pass upon the other questions made in this case.

It is suggested on behalf of the defendants that the construction which we have given to Section 1536-184 is inconsistent with the construction put upon the next succeeding sections by this court in *State, ex rel,* v. *Cleveland Electric Railway Company,* 6 C. C., 318. But a careful reading of the latter section will, we think, demonstrate the contrary. The first clause of Section 1536-186 clearly does not mean as much as, upon a merely cursory inspection, it would seem to indicate.

The plaintiff may take a decree in accordance with the prayer of his petition and with this opinion.