Spear, J.
The only question presented by the record is as to the capacity of the plaintiff in the common pleas to maintain his action. It is insisted, as against the judgment of the circuit court, that the action below cannot be maintained because the statute (sections 1777 and 1778, Revised Statutes), expressly forbids it, and because the common law affords no authority for its prosecution. Pertinent provisions of those sections (1 Bates, pp. 959, 960), are: “Section 1777: He (the city solicitor) shall apply in the name of the corporation, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract, made in behalf of the corporation in contravention of the laws or ordinance governing the *14 same, or which was procured by fraud or corruption.”
“Section 1778: In case he fail upon the request of any taxpayer of the 'corporation to make the application provided for in the preceding section, it shall be lawful for such taxpayer to institute suit for such purposes in his own name, on behalf of the corporation; provided that no such suit or proceeding shall be entertained by any court until such request shall have been first made in writing; and, further, provided that no such suit or proceedings shall be entertained by any court until such taxpayer upon motion of the solicitor or corporation counsel shall have given security for the costs of the proceeding.”
It seems fairly clear that these sections cannot have application to the case at bar. They treat of a situation which is essentially different. Their terms presuppose the presence of a solicitor, an officer on whom the request to begin a suit can be made; the petition shows that the village of Pike-ton had no solicitor. It was impossible, therefore, to comply with that requirement. . The inhibition that no such suit shall be entertained by any court until a request shall have been first made upon the solicitor in writing, and until the taxpayer shall have given security for costs, necessarily, we think, means a suit brought .by favor of those sections, one in which it is possible to make an effort to invoke the action of a law officer representing the corporation, and not a suit brought without relying upon the statute and one in which such request is impossible. The restrictions here imposed may well be treated as provisions to regu *15 late the practice in cases where reliance is had upon the statute, to prevent the inconsiderate bringing of actions by dissatisfied taxpayers, and the consequent piling up of costs against the municipality in cases of doubtful merit. It may perhaps be matter of surprise that this effort at regulation did not go farther and cover the entire ground of actions by taxpayers to prevent illegal expenditures by municipalities of all grades, but that omission does not afford ground for the conclusion that these enactments were intended to cover cases not necessarily within their terms. These provisions first appear in our statutes by the act of March 3, 1860, entitled: “An act relating to cities of the first class having a population exceeding eighty thousand inhabitants,” 57 Ohio Laws, 16. The natural inference would seem to be that, in the judgment of the general assembly, such regulation . as is by these sections provided did not then appear to be necessary in the municipalities of the state having a population of eighty thousand or less. It may be added that the case of the plaintiff below does not purport to be brought under the sections of the statute quoted.
We come now to a consideration of the claim that the plaintiff below had at common law no legal capacity to sue either on his own behalf or on behalf of the corporation. This proposition implies that, until the act of March 3, I860, there was no power on the part of taxpayers residing and owning property subject to taxation within any muncipality of the state who could have a standing in any court to ask such court to restrain the unlawful expenditure of corporate funds by *16 the municipal authorities, or the incurring illegally of corporate obligations by them necessarily resulting in increased burdens of taxation, and that after the date above stated, and until the amendment enacted some years later, resident taxpayers of all municipalities of a population of not over eighty thousand were lacking in such right. The proposition is at least a startling one, and as a first inquiry occurs the question why such resident taxpayers should not have such standing? They are members of the corporation itself, units making in the aggregate the entire corporation and thus necessarily possessing an interest in the corporate funds and property; their individual items of property situate therein are units of the whole and together constitute a large integral part if not the entire body on which the burdens of taxation are imposed. Speaking in the enlarged sense the corporation is the trustee and the inhabitants the cestuis que trust. If the corporation were a private one there could be no doubt of the power to sue. Can any situation involving only property be imagined where a stronger claim for relief can be made upon a court of equity? It is not easy to suggest one.
Nor is the question a new one in this state. It is observed by Gilmore, J., in Cincinnati Street R. R. Co. v. Smith, 29 Ohio St., 291, treating of the sections of the statute hereinbefore referred to, that: "The sections do not provide remedies that were previously unknown. Courts of equity had long taken jurisdiction and granted injunctions in such cases when properly presented by interested individuals, whose rights were put in *17 jeopardy by the illegal or unauthorized acts, or threatened acts, of municipal corporations.”- And in Weir v. Day, 35 Ohio St., 143, a suit involving the right of a resident taxpayer to enjoin an alleged illegal use of a schoolhouse by a board of education, Mcllvaine, J., observes: “It is also suggested that the plaintiff has not shown an injury to himself. As a resident taxpayer in the district, and hence a quasi corporator, it is his legal right to have the corporate property used solely for corporate purposes; and any diversion of the property to other uses is an injury to him in law. And in addition to this, the unauthorized use to which this property was devoted, necessarily results in damage to a greater or less degree, to say nothing of the risks.”
We think, also, that the general trend of judicial opinion in this state is consistent with the proposition that Sections 1777 and 1778 do not apply where there is no solicitor, and that a resident taxpayer may, for himself and the corporation, seek to enjoin the illegal use of corporate funds and property, and cite in support thereof the following cases: Hensly v. City of Hamilton, 3 O. C. C., 201; Cope v. Village of Wellsville, 25 W. L. B., 250; Kissel v. Village of Columbus Grove, 34 W. L. B., 50, affirmed 53 Ohio St., 650; Wood v. Village of Pleasant Ridge, 12 O. C. C., 177; Hallock v. City of Columbus, 1 N. P., N. S., 205; Smith v. Village of Rockford, 4 N. P., N. S., 513. See, also, dissenting opinion of Dempsey, J., in City of Cincinnati v. Ferguson, 12 O. D., 488, 500. Young v. Wilson ct al, a case disposed of by the Brown county circuit court in the year 1893, *18 holds the opposite doctrine. The decisions of that court are deserving of high respect, but they are persuasive only. A case from the Pike county circuit court is also cited as sustaining the contention of plaintiff in error. It seems not to do so. The point of the capacity of the plaintiff to maintain the action does not appear to have been passed upon by either the common pleas or circuit court.
The general right of the resident taxpayer to maintain an action of this character is recognized by a number of decisions of courts in other jurisdictions. Bromley v. Smith, 1 Sim., 9; Paterson v. Bowes, 4 Grant’s Ch., 170; Hanson v. Hunter, 86 Ia., 722; City of Richmond v. Davis, 103 Ind., 449; Crampton v. Zabriskie, 101 U. S., 601. In the case last cited, opinion by Mr. Justice Field, it is held that: “Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property-holders ■ of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases; and from the nature of the powers' exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the 'application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create bur *19 dens upon property-holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate powers. The courts may be safely trusted to prevent the abuse of their process in such cases. Those who desire to consult the leading authorities on this subject will find them stated or referred to in Mr. Dillon’s excellent treatise on the Law of Municipal Corporations.”
■ The principle is also recognized by a number of text-book authors of acknowledged authority, and by a number of digests. 1 Pomeroy’s Eq. Jur. (2d Ed.), Sec. 273; 2 Dillon’s M. C. (4th Ed.), Sec. 914; 21 Ency. of P. & P., 471; 20 Am. & Eng. Ency. of Law, 1231; Ellis’ Munic. Code, 343. Counsel on both sides have been diligent in bringing to our attention many authorities, all of which we have examined. A further review, however, does not seem called for. A class of cases seems to support the contention of counsel for plaintiff in error, but many of them are cases where a taxpayer sought wholly in his own name, and without assuming to represent others, or the corporation itself, and where his interests were not distinct from those of all other taxpayers of the municipality or district. The distinction between such a case and the one at bar is manifest. And, as between the cases which seem to deny the resident taxpayer the right to sue, and the holdings in our own state and elsewhere which sustain that *20 right, it is clearly our duty to follow the latter. If the resident taxpayer may not maintain such an action then no one can, and the municipal authorities may plunder- to their hearts’ content so long as they observe legal forms and escape the clutches of the criminal law, and nobody shall say them nay. This right is not better stated than by Judge Dillon in the section before cited:
“In this country the right of property-holders or taxable inhabitants to resort to equity to restrain municipal corporations and their officers from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the taxpayers — such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate property, or levying and collecting void and illegal taxes and assessments upon' real property under circumstances presently to be explained — has, without the aid of statute provision to that effect, been affirmed or recognized in numerous cases in many of. the states. It is the prevailing, we may now add, almost universal doctrine on this subject. It can, we think, be vindicated upon principle, in view of the nature of the powers exercised by municipal corporations and the necessity of affording easy, direct, and adequate preventive relief against their misuse. It is better that those immediately affected by corporate abuses should be armed with the power to interfere directly in their own names than to compel them to rely upon the action of a distant state officer. The equity jurisdiction may, in such cases, usually rest upon fraud, breach of trust, *21 multiplicity of suits, or the inadequacy of the ordinary remedies at law. * * * The doctrine * * * is supported by an analogy supplied by a settled rule of equity applicable to private corporations. In these the ultimate cestuis que trust are the stockholders. In municipal corporations the cestuis que trust are in a substantial sense the inhabitants embraced within their limits. In each case the corporation, or its governing body, is a trustee. If the governing body of a private corporation is acting ultra vires or fraudulently, the corporation is ordinarily the proper party to prevent or redress the wrong by appropriate action or suit in the name of the corporation. But if the directors will not bring such an action, our jurisprudence is not so defective as to leave creditors or shareholders remediless, and either creditors or shareholders may institute the necessary suits to protect their respective rights, making the corporation and the directors defendants. This is a necessary and wholesome doctrine. Why should a different rule apply to a municipal corporation? If the property or funds of such a corporation be illegally or wrongfully interfered with, or its powers be misused, ordinarily the action to prevent or redress the wrong should be brought by and in the name of the corporation. But if the officers of the corporation are parties to the wrong, or if they will not discharge their duty, why may not any inhabitant, and particularly any taxable inhabitant, be allowed to maintain in behalf of all similarly situated a class suit to prevent or avoid the illegal or wrongful act ? Such a right is especially necessary in the cáse of *22 municipal and public corporations, and if it be denied to exist, they are liable to be plundered, and the taxpayers and property-owners on whom the loss will eventually fall are without effectual remedy.”
A very learned discussion of the subject is given in 38 Cyc., pp. 1732 to 1738, and a large number of decisions of state courts are cited some of the older cases of which seem to restrict the right of a taxpayer to maintain an action to situations where he is injuriously affected in some way different from taxpayers generally; others holding that as against municipal corporations the right of action is confined to instances where the municipal authorities have neglected to act and then only after request to do so, unless the circumstances show that such a demand would be unavailing, but many cases are cited to the effect that, while taxpayers cannot contest municipal ordinances or acts merely upon the ground that they are unauthorized and invalid, they may judicially contest the validity of any official act which directly affects prejudicially their rights as taxpayers by increasing the burden of taxes or otherwise, and the great weight of authority, says the commentator, “is that if such action be illegal or unauthorized taxpayers may sue to restrain it without showing any special injury different from that sustained by other taxpayers.” The later ■ cases seem to tend to the more liberal doctrine, and, taken as a whole, we do not regard the discussion as at war with the conclusions we have reached in the present case, but rather affording support to them.
*23 Our holding is that a resident taxpayer of a village having no solicitor, who owns property within the village subject to taxation may maintain, for himself and the village, an action to restrain the misapplication by the municipal authorities of the funds of the corporation.-
The plaintiff below had legal capacity to maintain the action. His amended petition states a cause of.action. The sustaining of the demurrer to that pleading was erroneous, and the judgment of the circuit court reversing that holding will be

Affirmed.

Price, C. J., Shauck, Crew and Summers, JJ., concur.