The City of Richmond *v.* Davis.

Filed Nov. 3, 1885.

---

No. 10,810.

THE CITY OF RICHMOND *v.* DAVIS.

103 449
142 552

103 449
171 282

MUNICIPAL CORPORATION.—*Injunction.*—*Taxpayer.*—A taxpayer of a municipal corporation may maintain an action to enjoin the unauthorized expenditure of corporate funds, or the making of an investment that will result in loss to the corporation.

SAME.—*Discretionary Powers.*—While corporate officers may be enjoined from wasting corporate funds, they can not be enjoined from exercising a discretionary power as to the time, manner and plan of building structures for corporate purposes.

TRUSTS.—*Power to Lease Trust Property.*—Trustees possess general power to lease trust property, if the lease does not exceed the quantity of estate vested in them as trustees, and is a reasonable one.

SAME.—*Devise to Charitable Uses.—Perpetuities.*—A devise for a charitable purpose is in its nature perpetual, and does not come within the provisions of the statute against perpetuities, section 2962, R. S. 1881.

SAME.—*Perpetual Leases.—Municipal Corporation.—Order of Court.— Want of Power.*—Where trustees of real estate devised in trust for a charitable use executed perpetual leases of such real estate to a municipal corporation for corporate purposes, such leases are not void because of the want of power in the trustees to execute them, nor are they void for the reason that the leases were not ordered or confirmed by the proper court.

SAME.—*Action to Set Aside Leases.*—It is the general rule that trustees of land devised to a charitable use should only lease for years, unless ordered by the proper court to lease for a longer term; but leases for lives or long periods, though executed without the sanction of the court having the control of the trust, will not be set aside in a collateral attack or at the suit of a stranger, unless they are so clearly unreasonable or detrimental to the beneficiaries that a court will not allow the leases to stand.

SAME.—*Equity.—Rights of Lessee.*—Equity will protect the rights of lessees who, acting under perpetual leases of real estate devised to charitable uses, have in good faith made permanent improvements, where such leases are set aside on the application of the proper parties.

From the Wayne Circuit Court.

*W. D. Foulke, J. L. Rupe* and *J. H. Kibbey,* for appellant.

ELLIOTT, J.—The appellee sues as a taxpayer and citizen of the city of Richmond, and asks that the city officers be enjoined from erecting buildings on land which it claims to have acquired by a lease. The theory upon which the complaint proceeds is, that the city can acquire no rights in the land on which its officers propose to erect the buildings. The nature of the claim of those from whom the title to the land is devised is set forth, and from the allegations of the complaint upon this subject we gather these facts: Ithamar War-

ner owned the land in 1835, and in that year died testate; in his will he devised the land in controversy to his sister, Sarah Warner, during her life, and remainder in trust for the education of the children of the town of Richmond. In a suit, wherein James R. Mendenhall, James Elder and Joel Vaile, school trustees, were plaintiffs, and the city of Richmond was defendant, the Wayne Circuit Court, in the year 1853, appointed the school trustees Elder, Vaile and Mendenhall trustees under the will, and ordered that the trust should vest in their successors in office. The city appealed to the Supreme Court where the judgment of the circuit court was affirmed. After the rendition of this judgment, the only claim of the city was founded upon leases executed by the school trustees. The invalidity of these leases is thus averred: "And said plaintiff says that the parties who executed the several so-called perpetual leases, under which alone all claim of said city to the title or possession of lot 28, or any part thereof, is derived, had no power or authority to execute the said leases or either of them, and they were never authorized or directed by the court having jurisdiction of the trust to execute said leases, nor were the said leases ever reported to, or ratified or confirmed by the court, and said instruments and each of them are wholly null and void."

A taxpayer of a municipal corporation may maintain an action to enjoin the unauthorized expenditure of corporate funds by the officers of the municipality. This case, so far as concerns the right of a taxpayer to sue, falls within this general principle, for we regard it as clear that corporate officers may be enjoined from making an investment that will surely result in loss to the corporation.

While corporate officers may be enjoined from wasting the funds of the corporation by an investment that will result in a loss of the money invested, they can not be enjoined from exercising a discretionary power as to the time, manner and place of building structures for corporate purposes. Whether this suit can be maintained depends upon the effect to be

given the complaint. If it shows no more than the exercise of a discretionary power, the suit can not be maintained; if it shows that the officers are about to make an investment that will result in the loss of the money invested, the suit is well brought.

If the person from whom the city claims title could convey none, then it is manifest that the city officers should not be allowed to waste the corporate funds by investing it in the property. The pivotal question, therefore, in the case is, can the city acquire title to the leased property?

The school trustees, by whom the leases were executed, were trustees under the will of Ithamar Warner. This was conclusively settled by the judgment pronounced in 1853, and affirmed by this court in the succeeding year. *Common Council, etc., v. State, ex rel.*, 5 Ind. 334.

Trustees have a general power to lease lands, but the lease must be a reasonable one. Perry Trusts, section 484. An English author says: "Where the length of the term to be granted is not defined by the power, the trustee must be guided by the consideration of what is most beneficial to the trust estate." Hill Trustees, 482. Mr. Taylor says: "Trustees of land, being the owners of the legal estate, may grant leases which can not be impeached, so long as they are justified, by the quantity of the estate they possess." Taylor Landlord and Tenant, section 130.

It appears from these authorities that the law is, that trustees possess general power to lease trust property, and as they do possess this power, their leases, if executed according to law, are valid unless they exceed the quantity of the estate vested in the trustees, or the leases are unreasonable. The leases described in the complaint do not exceed the quantity of the estate vested in the trustees. The trustees succeed in a perpetual line, and their duties are to make the trust estate yield the greatest revenue, and there is nothing in the complaint showing that they have not adopted a course that will produce this result. The presumption is that they have faith-

fully discharged their duties, and he who would build a right upon a breach of duty must aver facts countervailing this presumption.

The leases under which the city of Richmond derives title are not void because of the want of power of the trustees to execute them, nor are they void for the reason that they were neither ordered nor confirmed by the court. It would have been better to have obtained the order of the court having control of the trust to execute them, but the failure to obtain this order does not render them void. An English author says: "As a general rule, trustees of charities should never alienate the trust estate without the sanction of the court. It does not necessarily follow, that such an alienation will be treated *per se* as a breach of trust." Hill Trustees, 463.

We are without a brief from the appellee, and we can not definitely ascertain upon what ground the court held the complaint good. Our conjecture, however, is that it was for the reason that the leases executed to the parties from whom the title of the city was derived were void, as contravening the statute against perpetuities. That statute provides that "The absolute power of aliening lands shall not be suspended by any limitation or condition whatever, contained in any grant, conveyance, or devise, for a longer period of time than during the existence of a life, or any number of lives in being at the creation of the estate." R. S. 1881, section 2962. It is very doubtful whether this statute applies, in any case, to leases, for its language implies that it was intended to operate only upon the fee, and it is difficult to perceive any reason for extending its terms to leases or mortgages. The language employed, taken in its ordinary signification, seems applicable only to cases where there is an attempt to tie up the fee and circumscribe the power of alienating the land. In leasing land, no obstacle to the alienation of the fee is created. The fee is not tied up, nor is the circulation of that estate interdicted. There is, indeed, no restriction upon the power of the owner of the fee to alienate that estate, for he may

convey at pleasure, subject only to the rights of the lessee, nor is there any restriction upon the lessee's rights, for he may sublet the demised land or assign his lease. But we need not, and we do not, decide whether this statute prohibits the execution of a lease in ordinary cases for a period beyond that prescribed by the statute, for we need do no more than decide that the statute does not apply to the case of the devise or the lease of land for a charitable purpose.

There is, and has ever been, a difference between ordinary devises and devises made to a charity. The difference is not an artificial one, but is inherent and fundamental. A devise for a charitable purpose is in its nature perpetual and inalienable. An English author, in speaking of conveyances to charitable uses, says: " This, it is obvious, is the characteristic of alienations to charitable uses: it is in the very nature of such dispositions, to withdraw the subject of them from every kind of circulation, since a contrary course defeats their manifest object, viz., the sustentation of the charitable or religious institutions, or the carrying out in continuity of the benevolent purposes and designs, in favor of which they are made." Lewis Perpetuities, 689; 52 Law Library, 438.

In *City of Philadelphia* v. *Girard's Heirs*, 45 Pa. St. 1, the court, in speaking of a definition of perpetuities, said: "According to this definition, a present gift to a charity is never a perpetuity, though intended to be inalienable." In discussing a devise very similar to that involved here, it was said by the Supreme Court of the United States: " McMicken's direction, in section 32 of his will, that the real estate devised should not be alienated, makes no perpetuity in the sense forbidden by the law, but only a perpetuity allowed by law and equity in the cases of charitable trusts." *Perin* v. *Carey*, 24 How. 465.

It was said in *Yard's Appeal*, 64 Pa. St. 95, that "It is no valid objection to a grant or devise to a charitable use that it creates a perpetuity, or renders the estate granted or devised for the purpose inalienable."

The distinction between devises to charitable uses and ordinary devises is recognized in *Detwiller* v. *Hartman*, 37 N. J. Eq. 347, where the English cases are collected. The decision in the case of *Common Council, etc.*, v. *State, ex rel., supra*, impliedly recognizes this doctrine, although the question as here presented was not there directly argued or decided.

The devise to the charitable use suspended the power of alienation, but, as we have seen, this was a valid devise. The leases executed by the school trustees did not suspend the power of aliening the land, for this power was suspended before the trustees entered upon their duties. The suspension of the power of alienation is contained in the instrument which creates the trust and invests the trustees with the legal estate in the land. That power, therefore, was suspended, not by the act of the trustees, but by the devise which gave them their authority over the property. Their leases did not tie up the land and keep it from circulation, for that was done by the devise. The power of alienation was effectually abridged by the devise, and the leases executed by the trustees have not kept the property from circulation. The leases have not suspended the power of alienation; that was done by the devise long before the leases were executed. These leases can not, therefore, be deemed within the statute, if, indeed, any leases are, for the plain reason that the power of alienation was fettered by the devise which created the trust. It can make no difference whether the property is tied up in the hands of the trustees or their lessees, provided the revenues perpetually go to the charitable use. Whether the land is in the hands of the trustees or of their lessees, can make no difference, for, in either event, the power of alienation is effectually abridged. So far as concerns the general policy and spirit of the law against perpetuities, it can not make a shade of difference whether the land is tied up in the hands of the trustees or their lessees.

It is the general rule that trustees of a charitable use should only lease for years, unless they have obtained the order of

the court to lease for a longer term. But leases for lives, or for long periods, are not necessarily void for the reason that they were not sanctioned by the court having control of the trust. Mr. Hill says, of the general rule we have stated: "But it by no means follows, that leases granted in opposition to that rule are necessarily invalid as a breach of trust. On the contrary, such leases have frequently been supported under special circumstances. Thus, where it has been the usual custom to lease for lives, or for years determinable on lives, the trustees will be justified in adopting that custom, and in granting leases in that form. But in such cases it seems that the number of lives in the grant ought not to exceed three. Again, where the terms of the lease are fair and reasonable, and for the benefit of the charity, the court, on being satisfied of those facts, has upheld leases granted by trustees for a long term, such as eighty years, or even for so long an absolute term as amounts in fact to an alienation, as 980 or 999 years; and a lease with a covenant for a perpetual renewal has also been sustained on the same ground." Hill Trustees, 463.

There is nothing in the complaint from which it can be inferred that the disposition made of the property was not the one most beneficial to the charity. We can not say from the facts pleaded that a better disposition of the trust estate could have been made, and the action of the trustees should not be virtually set aside upon such a complaint as the present; for, whatever may be the rule where the beneficiaries invoke the aid of the court to overthrow a lease executed by the trustees, here, where a stranger attacks their action, the rule is that the complaint must show that the action of the trustees was so clearly detrimental to the beneficiaries that a court would not allow it to stand. But there is stronger reason for requiring the plaintiff, in a collateral suit like this, to show a plain breach of duty, than there is where a stranger intervenes to protect the trust fund, and that reason is this: The plaintiff's right to sue depends upon his showing that the leases were so clearly

unreasonable that the court must necessarily annul them. This plaintiff, it is important to keep in mind, is not asking protection for the trust estate, but, in the capacity of a taxpayer, is seeking to enjoin the city from building on the leased land. The theory upon which he proceeds, and it is the only theory that lends the faintest color of plausibility to his claim, is, that the leases are void, and if the city, acting under them, builds on the leased premises, the money expended in building will be lost. His right to sue depends entirely upon the probability of loss to the city. If he does not show that loss will result, he has not even the semblance of a right to maintain the suit.

As the right of the appellee to maintain this action depends upon his showing that loss will result to the municipality, he can not succeed, even though we should decide that the leases were void, unless he also shows that loss will result. It may be conceded that the leases would be set aside upon application of the proper parties, and yet no loss of the city's investment result from the order annulling them. This we affirm for the reason that the court, whenever equity requires it, will protect the rights of the party who, acting under such leases, has in good faith made permanent improvements upon the demised land. *Attorney General* v. *Baliol College*, 9 Mod. 407; *Attorney General* v. *Backhouse*, 17 Vesey Ch. 283; *Second Unitarian Society* v. *Woodbury*, 14 Maine, 281.

There is nothing averred in the complaint which shows that the rule we have stated should not apply to this case.

We hold the complaint bad, and for the reason that the court erred in overruling the demurrer to that pleading, the judgment must be reversed.

Filed Nov. 3, 1885.