BURKE, EXECUTOR *v.* THE CRAWFORDSVILLE TRUST
COMPANY, ADMINISTRATOR ET AL.

[No. 15,619. Filed July 1, 1936. Rehearing denied October
13, 1936. Transfer denied December 15, 1936.]

*W. J. Sprow,* for appellant.

*Foley & Foley* and *William W. Kummings,* for appellees.

DUDINE, J.—Grace Divine Law died leaving a last will (with a codicil) which provided for a charitable trust. She left surviving her, as her sole heirs at law, Blanche Sloan Williams, a niece, Blanche D. Harding and Anna D. Montgomery, her sisters, and William Divine Davis, a nephew. Said last two heirs at law died since testatrix's death, and appellee administrators were duly appointed, with reference to their respective estates.

This is an action instituted by appellees asking for a construction of said will and codicil. The complaint alleged that the amount provided for the charitable trust would be insufficient for the "avowed purpose and intent of said testatrix," and therefore the court should declare the proposed trust "impracticable, inoperative and of no effect"; and there being no other disposition of said funds, made in the will or codicil, the funds in-

tended for said trust should be distributed to said heirs at law of the testatrix.

The issues having been closed, the cause was submitted to the court for trial, a special finding of facts, and conclusions of law.

The court found that "it would be impracticable and impossible to carry out the . . . charitable intent of the testatrix . . .," that decedent died intestate as to said funds, and that said funds should be distributed to said heirs at law." The court stated three conclusions of law, which were in effect as follows: 1. The law is with the plaintiff. 2. The provisions of the will which purport to provide the charitable trust are wholly void, inoperative and of no effect, and decedent died intestate as to said funds. 3. Said funds should be distributed to the appellees in equal shares.

Judgment was rendered in accordance with the conclusions of law.

Appellant filed a motion for new trial, which was overruled. Thereupon this appeal was perfected. The following alleged errors are presented: 1. The court erred in each of its conclusions of law. 2. The court erred in overruling the motion for new trial.

The will and codicil were introduced in evidence, and it was shown by the evidence that after the payment of all debts, legacies and costs of administration, approximately $40,000.00 would remain available for said trust. The relationship of appellees to testatrix was also shown. No other evidence was introduced except a line of evidence showing how certain homes for aged people in Indiana and elsewhere in the United States are financed, and showing the cost of maintaining said homes, and except opinion evidence of witnesses who were connected with said homes, as to whether or not it would be possible to establish and maintain a suitable

home for such purpose with no more than $40,000.00 available.

The court found the facts as to the death of Grace Divine Law, as to her leaving a will and codicil and as to the probation thereof, and incorporated a copy of the will and codicil in the finding. The court further found the facts as to the relationship of appellees to the testatrix, and the fact that "after the payment of all debts, legacies, expenses and costs of administration . . . there will remain for the purposes designated . . . as charitable approximately the sum of $40,000.00."

The court further found facts as to the cost of maintaining the various homes which were referred to in the testimony, and as to how said homes are financed.

On account of the pertinency of facts found by the court and numbered sixteen and seventeen, we deem it expedient to set said facts out in full. They were as follows:

"No. 16. The Court further finds that it would be impracticable to undertake, and impracticable and impossible to establish, maintain and operate a home for the care and support of aged men and women in Montgomery County, Indiana, as intended by the testatrix, Grace Divine Law, under item twelve (12) of said last will and testament, with and upon an original trust fund in the sum of forty thousand dollars ($40,000.00), and that the cost of establishing, maintaining and operating such a home would soon exhaust the whole corpus of said trust fund without realizing the object and intent of the testatrix, and that to attempt to realize the object and intent of the testatrix would result in failure and in a needless, useless and wasteful expenditure of trust funds, and that after the establishment of such home, all the income that could be reasonably expected to be available to such a home would not be sufficient to meet the necessary and ordinary expenses incident to the proper operation and management of such a home and to pro-

vide for the proper support and maintenance of any aged person therein.

"No. 17. The Court further finds that it would be impracticable and impossible to carry out the specific charitable intent of the testatrix under item twelve (12) of the said last will and testament of Grace Divine Law, deceased."

We are called upon to determine whether the court erred in its conclusions that the provisions in the will for the trust are "wholly void, inoperative and of no effect," and in the conclusion that the funds available for said trust should be distributed to the heirs at law. A determination of those questions requires a construction of the will and codicil, and particularly a construction of item 12 of the will, which provides for the trust.

In construing wills courts should recognize the rule of law that every man has the right to make his own will. Courts have no more right to make wills for the dead, than they have to make contracts for the living. *Herron* v. *Stanton, Admr.* (1920), 79 Ind. App. 682, 147 N. E. 305. It is the policy of the law to uphold every provision of a will and to avoid a construction that any provision of the will is void, if that can be done without violating established rules of construction.

"In construing a will, or any item or provision thereof, the primary object is to ascertain the intention of the testator. *Steiglitz* v. *Megatz* (1914), 182 Ind. 549, 105 N. E. 465. The intention of the testator must be ascertained from the language used in the will; . . . A construction of a will resulting in partial intestacy will be avoided, unless the language of the will is such as to compel it. *Hardy* v. *Smith* (1919), 71 Ind. App. 688, 123 N. E. 438. . . ." *Herron* v. *Stanton, Admr., supra,* p. 690. "Gifts to charitable uses should be highly favored, and construed by the most liberal judicial

rules that the nature of each case, as presented, will admit of, rather than that the gift should fail and the intent of the donor not be accomplished." *Dykeman* v. *Jenkins* (1913), 179 Ind. 549, 555, 101 N. E. 1013.

We will now consider testatrix's last will and codicil with the above rules of construction in mind. We shall also keep in mind the fact that we are called upon to ascertain testatrix's intention, as expressed in her will and codicil, and that we are not called upon to determine whether the heirs at law shall or shall not receive the funds intended to be used for testatrix's charitable intention.

The will has thirteen "items," and the codicil has two "items." By items one, two, three, four, five, six, seven, nine, and ten of her last will testatrix made specific bequests or devises to various persons and organizations, which devises and bequests were not affected by the provisions in the will for the charitable trust. Item eleven of the will merely directed the sale of all of testatrix's real estate which was not specifically devised, and that the proceeds become part of her personal estate. In item thirteen testatrix named the persons whom she desired to act as executors of her last will.

Item 12 of the will, which provides for the charitable trust, reads as follows:

"ITEM 12. All the rest and residue of my personal estate then remaining, after the payment of the aforesaid general and specific bequests, the indebtedness due and payable from and by my estate, the expenses of administration thereof, and all charges, liens or *encumbrances* against said estate as the court may determine are just and lawful, I give, and *bequeth* unto my executors or their successors, in *trust* for the purposes and on the express conditions as follows, viz.:

a. That said executors or their successors in trust shall upon final distribution of my personal

estate ordered by the said court hold the rest and residue of said personal estate until said trust is fully executed, and during said interim shall so far as prudent business management permits keep said residuary personal estate invested so as to earn and draw such interest thereon as is consistent with safety to the principal thereof, retaining such investments or said estate not heretofore consumed or disposed of in connection with the administration, in such securities as they shall have come to them in so far as same shall be considered safe.

b. Within a period of one year from the date of the receipt of said residuary trust estate by said executors or their successors or within such further period as it shall appear to said court to be necessary to effect the execution of said trust, said Trustees shall have organized under the Voluntary Association or other acts of the State of Indiana, a corporation the purpose, object and duties of which shall be as follows, to wit:

1. The Corporation shall be called the 'Divine Law Association of Crawfordsville, Indiana,' or have a name in effect the same.

2. The purpose of said Corporation shall be to establish and maintain a home in Montgomery County, State of Indiana, preferably in or near the City of Crawfordsville, therein, for the care and support of aged men and women, as hereinafter more fully set out.

3. The home shall be established by said Corporation and by it maintained, and called the 'Divine Law Home for Aged Men and Women' or such other name as the said Corporation shall determine, so long as it shall include the name 'Divine Law' to commemorate the testatrix.

4. The principal place of business of said Corporation shall be in Crawfordsville, Indiana.

5. The said Corporation shall not be organized for pecuniary profit, but as a Charitable public institution for a charitable purpose.

6. The manner of election or appointment of all trustees, directors or managers and officers, and the number of same who shall manage the business and

8.

prudential concerns of said Corporation shall be determined by the incorporators thereof.

7. It is my wish and desire that for the purposes of organization of said corporation the said executors or their successors shall invite the following persons resident in the City of Crawfordsville, aforesaid to incorporate said corporation and act as the directors of and manage the same for the first year of its existence, viz.: Dr. F. O. Schenck, John C. Barnhill, Junior, and Miss Stella Clodfelter, and in the event that any of said persons shall not be living or resident in said city, or shall refuse to act as such incorporators when so invited to act by said Trustees, then and in that event the persons herein named then living and residing in the City of Crawfordsville, and willing to assume and assuming the duties hereinbefore outlined, shall themselves choose and select to co-operate with them such person or persons in said city as he, she or they may deem competent and fitting to fill the places made vacant in any of the above stated ways, and in the event that none of the persons so designated herein shall me survive and survive at the time of the formation of said corporation to carry said organization into effect, then the court having jurisdiction of this my last will and testament shall nominate such persons resident in the City of Crawfordsville as it may deem qualified and who shall be willing and will carry out my wishes in the premises; and in the further event that the manner of executing the purposes of this trust shall for any reason fail or be unlawful, then the court aforesaid shall by such other method as it may determine is right and lawful give full force and effect to the execution of the charitable trust hereinbefore intended.

8. When said corporation has been duly and lawfully organized, it shall adopt such a constitution and by-laws as it may deem suitable and necessary and shall be lawful to effect the purposes of said organization, and shall have duly elected its officers for the first year, and thereby a treasurer, such treasurer shall give the corporation a proper and sufficient bond to insure his faithful performance of the duties of his office.

9. Thereupon, and upon a showing to the court that such matters hereinbefore stipulated have been fully accomplished by the said Trustees, and upon a full report by them to the court showing their faithful management of said residuary personal estate, and the payment of any claims or charges properly entailed against said fund, including the proper costs of organizing and setting in operation said Corporation, the Court shall allow to said Trustees such fees for services in connection with the management of said trust as the court may determine are fair and equitable, and make an order directing the transfer of the balance remaining of said trust fund to the treasurer of said corporation as organized, for and on behalf of said corporation, to be used in trust by said corporation for the purposes hereinbefore set out, and upon a showing to the court that said order has been fully complied with, the trustees of said trust fund shall be discharged and thenceforth said corporation shall be and become the owners of said fund surrendered to it, in trust to carry out the purposes designated in this will.

10. Said corporation, in consideration of the receipt of said *bequest* shall take the same impressed with a trust for the public benefit along the lines designated in its objects of incorporation, and shall establish, as soon as practicable and in its judgment *expedient*, but without unnecessary delay, such a Home for Aged Men and Women as it may deem wise, using the funds herein given in such manner and to such extent as best suited in its judgment to the purposes for which same are given; shall establish rules and regulations for admission to said Home based upon the merits and needs of the applicants or appointees for admission; shall place limitations as to that territory in the State of Indiana from which persons shall be acceptable into the Home, preferably to residents of Montgomery County, Indiana, first before accepting persons residing outside thereof; shall limit the occupants thereof as beneficiaries therein to persons of genteel birth and breeding of the Caucasian blood, but without restrictions as to creed or religious *beliefs;* shall make and exercise regu-

lations for the conduct of persons admitted, for their maintenance and provision while resident therein, their expulsion, therefrom, and all other things naturally and necessarily incident to the operation and management of such an institution.

11. While it is the intent of the testator that said Corporation shall perpetuate said Home in memory of the benefactions of the testatrix and her deceased husband, Harry W. Law, it is also her wish that the said corporation shall so manage its affairs that said Home will enure and endure as a monument to the City of Crawfordsville, or Montgomery County, Indiana, for future generations, and will be a charity so deserving in the good that it accomplishes and comfort it brings to elderly men and women who in their declining years have been brought to indigence, that it will receive the support of other bequests and gifts from time to time to perpetuate its benevolent purposes."

By item one of the codicil testatrix made provisions as to the disposition of the amount bequeathed to a certain legatee, in case said legatee preceded testatrix in death. By item two of the codicil testatrix expressed her desire that James G. Wedding "be invited . . . to serve under the terms as in said will so provided" as one of the incorporators and directors of the corporation referred to in item twelve of the will, in lieu of one of the persons selected by her in paragraph seven under clause b, of item twelve of the will.

Item eight of the will was as follows:

"I give and bequeth to my executors or their successors in trust, my Steinway upright piano, to be by them given to the Association hereinafter provided for to be placed and used in the Home which said Association shall establish, when the trust hereinafter named in relation to said Association shall have been executed."

Appellee contends that item twelve of the will does not express a general charitable intent, but that it ex-

presses a specific charitable intent "to construct, maintain and operate a home in Montgomery County, Indiana, for aged men and women of genteel birth and breeding of the Caucasian race, under the name of the 'Divine Law Home for Aged Men and Women,' or some other name so long as it included the name 'Divine Law' so as to commemorate the testatrix, and that the funds available are entirely inadequate, and that it would be impracticable and impossible and a waste of funds to attempt to carry out the specific charitable intent of the testatrix."

It is clear that the construction of the will for which appellee contends, and the construction placed upon it by the trial court is a construction which holds that one of the provisions of the will is void, a construction which results in partial intestacy of the estate. As we have previously stated, such constructions should be avoided unless the language of the will is such as to compel it. *Herron* v. *Stanton, Admr., supra.*

We do not think the language of the will and codicil compels such a construction; on the contrary, in view of the fact that gifts to charitable uses are highly favored and are to be construed by the most liberal judicial rules that the nature of each case will admit of, rather than that the gift should fail and the intent of the donor not be accomplished (*Dykeman* v. *Jenkins, supra*) we think item twelve of the will should not be declared void, but should be given effect.

In paragraph two, under clause b of item twelve, testatrix declares the purpose of the trust, and proposed corporation to be "to establish and maintain a home . . . for the care and support of aged men and women." In paragraph five under said clause, testatrix declares that, "The said corporation shall not be organized for pe-

cuniary profit, but as a charitable public institution for a charitable purpose."

Paragraphs one, two, and eleven under said clause indicate that testatrix intended the proposed home to serve as a memorial to herself and her deceased husband, but a consideration of item twelve as a whole, indicates that her prime purpose was to provide a home for the aged.

She gave the corporation complete powers with regard to the establishment and maintenance of the home. It should be noted that she did not require the corporation to *buy* or *build* a home, but to *"establish"* a home. The corporation was not required to buy or build a home, but was authorized to rent a home, if it saw fit to do so. The corporation was not required to establish the home within a specified period of time, but was authorized to establish it "as soon as practicable and in its (the corporation's) judgment expedient." The corporation was authorized to establish and maintain "such a Home for the Aged Men and Women as it (the corporation) may deem wise, using the funds herein given in such manner and to such extent as best suited in its (the corporation's) judgment to the purpose for which it is given." (Quotation from paragraph ten, clause b of the will.) Those provisions gave the corporation the authority to determine, not only *when* to establish the home, but to determine *how large* a home, and *what type* of a home they would establish, and gave the corporation the authority to determine how the money should be used to carry out testatrix's expressed wish. The will did not require that the aged people be taken into the home and cared for free of charge, nor did it require that the corporation assume the burden of caring for them in case of prolonged sickness or disability. The will authorized the corporation "to establish rules and

regulations for admission to said home, based upon the merits and needs of the applicants or appointees for admission; . . . (to) make and exercise regulations for the conduct of persons admitted, for their maintenance and provision, while resident therein . . . and all other things naturally and necessarily incident to the operation and management of such an institution." (Paragraph ten, clause b.) In paragraph eleven under clause b, testatrix indicated that this fund was not intended to be used so as to be sufficient, of itself, to *perpetually* maintain the home, but that the corporation should manage its affairs so that the home "will be a charity so deserving in the good it accomplishes . . . that it will receive the support of other bequests and gifts from time to time to perpetuate its benevolent purposes."

As we have stated above, "in construing a will, or any item or provision thereof, the primary object is to ascertain the intention of the testator. *Steiglitz* v. *Migatz* (1914), 182 Ind. 549, 105 N. E. 465. The intention of the testator must be ascertained from the language used in the will." *Herron* v. *Stanton, Admr., supra* (p. 690).

It must be conceded that the language used in the will shows that testatrix intended the trust to be carried out, regardless of the amount that would be available for that purpose. We think the powers given the corporation were broad enough to have made the trust practicable, even though the amount available for the trust had been much less than $40,000.00, particularly in view of the fact that the corporation had full power to determine *when* to establish the home, and *how* to use the money to carry out the charitable intent.

We hold that the will is subject to a construction which does not void any of the provisions of the will, and which does not result in partial intestacy of the estate, and therefore it follows that the court erred in

its conclusions of law, unless facts found by the court justify said conclusions of law. The trial court must have been materially influenced by its finding of the facts as to the financing and cost of maintaining said other homes, in stating the conclusions of law. Said facts do not authorize a construction of the will which is different from a construction which is based on the language of the will, and hence do not justify the court's conclusions of law.

In paragraph seven under clause b, testatrix expressed an intention of guarding against a failure of said charitable trust, as follows: "in the event that the manner of executing the purposes of this trust shall *for any reason* fail or be unlawful, then the court aforesaid shall by such other method as it may determine is right and lawful give full force and effect to the execution of the charitable trust hereinbefore intended." (Our italics.)

It should be noted that by this language testatrix intended to guard against a failure of said trust *for any* reason, including a failure for the reason that the amount available might seem insufficient to carry out the trust. It is certain that she did *not* want this fund to be distributed to her heirs at law.

The conclusions of law, that the trust is inoperative and of no effect, and that the fund be distributed to appellees, lead to a result which is completely different from the result which testatrix wanted to accomplish, as is shown by the entire will, and particularly by the provisions in paragraph seven of clause b, quoted above.

In support of the assignment that the court erred in overruling appellant's motion for new trial, appellant challenges the sufficiency of the evidence to sustain the finding of facts numbered sixteen and seventeen which were in effect a finding that it would be impracticable

and impossible to establish, maintain and operate such home with and upon an original investment of $40,-000.00. It is apparent that appellees rely upon the evidence as to the financing of said other homes, the cost of their maintenance, and the opinion evidence as to the practicability of establishing and maintaining such homes, to sustain the finding of said facts. In view of the broad powers given the corporation in the matter of determining the kind of home they were to establish, *when* they would establish it, and how they would regulate and maintain it, we hold that said evidence, which related to said particular homes, does not sustain the finding of said facts numbered sixteen and seventeen.

Other questions are presented under the assigned error in overruling the motion for a new trial, but on account of the result reached by us, it is not necessary that we discuss said other questions. (As a case which indicates the trend of our Supreme Court on questions somewhat similar to the questions involved here, see *Reasoner* v. *Herman* [1921], 191 Ind. 642, 134 N. E. 276.)

For the reasons stated we hold that the court erred in each of its conclusions of law and in overruling appellant's motion for new trial. The judgment is therefore reversed with instructions that appellant's motion for new trial be granted, and that further proceedings in this cause be in harmony with this opinion.