QUINN ET AL. *v.* PEOPLES TRUST & SAVINGS COMPANY ET AL.

[No. 28,060.   Filed April 5, 1945.   Rehearing denied May 3, 1945.]

*Eggeman, Reed & Cleland,* of Fort Wayne, for appellants.

*Newkirk & Keane,* of Fort Wayne, for appellee.

YOUNG, J.—On July 7, 1936, Celia Foley duly executed a will and on February 27, 1942, added a codicil. After a few small bequests the testator disposed of the residue of her estate by Item VII, about which this litigation revolves. Item VII reads as follows:

"All the rest, residue and remainder of my property, both real and personal, wherever situated, I will, bequeath and devise to The Peoples Trust and Savings Company in Fort Wayne, Indiana, in trust, for the purposes and upon the conditions as follows, to-wit:

"1. Said Trustee shall hold all property given it and collect the income therefrom and may in its discretion from time to time sell such part thereof as needed and as it thinks advisable, all with or without notice and appraisement and upon such terms as it thinks best and proper.

"Said Trustee may also invest and reinvest, from time to time, any money coming into its hands, whether the money be from sale of property or from income on the trust property.

"2. Said Trustee is directed to pay from the funds in its possession to my friend, Miss Bernadette Monahan, of Fort Wayne, Indiana, the sum of twenty-five dollars ($25) per month for and during her natural life and said monthly payments are to begin one month after my death.

"3. Said Trustee is directed to pay from said trust property to my friend, Mrs. Olive Eaton, of Fort Wayne, Indiana, the sum of fifteen dollars ($15) per month for and during her natural life, and said monthly payments are to begin one month after my death.

"4. After the Trustee has set aside from the trust property a sufficient amount to take care of the monthly payments to be made as hereinabove directed, the remainder of the trust property, including that not used for said monthly payments, shall be used to promote college or university edu-

cation of children of employees of the Pennsylvania Railroad Company living in the City of Fort Wayne, Indiana. This is done by me in memory of and in honor of my deceased brother, Thomas J. Foley, a former Pennsylvania employee. Only one person at a time shall receive benefit of this bequest and the persons from time to time to receive the benefits hereof shall be chosen whenever there is available property for the purpose herein designated by a committee of three persons, to-wit: (a) President of Trustee, (b) Judge of the court in Allen County having probate jurisiction, and (c) Superintendent of the School City of Fort Wayne.

"The selection of the boy or girl, as the case may be, from time to time must depend upon three factors: 1. A good high school record. 2. A real and persistent desire for a college or university education. 3. Inability to acquire a college or university education without the benefit of the fund herein created.

"The boy or girl selected to receive the benefit hereunder shall have the right to select or choose the college or university, but the amount to be paid each year shall be left to the committee aforesaid and shall not exceed eight hundred dollars ($800) per year and shall not be paid to any one person for more than four years.

"Whenever an award is made, the annual amount shall be paid in eight equal installments, one month apart, the first installment to be paid at the beginning of the school year.

"This fund shall be administered as aforesaid until completely exhausted."

By the codicil the monthly payments to Miss Bernadette Monahan were changed to $40.00 per month, and the payment to Mrs. Olive Eaton were eliminated because of the intervening death of Mrs. Eaton.

The testatrix never married and died on December 29, 1942, leaving no father, mother, sister or brother. She left as her sole and only heirs the appellants, two of whom are nephews, one of whom is a niece, one of

whom is a grand-nephew and one of whom is a grand-niece.

The appellants commenced this action by complaint in three paragraphs filed on April 1, 1943, asking a declaratory judgment determining the validity of the trust and the rights of appellants in the residuary estate of the testatrix.

Each paragraph of complaint alleges the relationship of appellants to the testatrix and the execution of the will in question and that the testatrix died and left personal property in excess of $85,000.00 after payment of all indebtedness, costs of administration and specific bequests; that in addition thereto she left real estate of an estimated value of $10,000.00 with a rental income of approximately $100.00 per month; that in the future the gross income from personal property will exceed $2,500.00 per year and the gross income from real estate will exceed $1,000.00 per year. At the bottom of appellants' case is their belief that under the will only one child at a time can receive the benefits of the trust in an amount not exceeding $800.00 per year, and that the trust estate will produce large excess income which may accumulate in perpetuity.

The theory of the first paragraph of complaint is that Item VII of the will is wholly void and that the plaintiffs, as testatrix's heirs, are entitled to her residuary estate. The theory of the second paragraph of complaint is that Item VII is invalid as to excess income, and that the plaintiffs are entitled to receive from time to time so much of the income of the trust estate as is not necessary in a strict and literal compliance with the administrative provisions of the trust clause of the will as written. The theory of the third paragraph of complaint is that Item VII is invalid as to the real estate and such

personal property as is not necessary to produce income required in a strict and literal compliance with the administrative provisions of the trust clause of the will and that the court should determine the amount of property necessary to produce such income and award the excess property to plaintiffs.

Each defendant filed a demurrer to each paragraph of complaint alleging insufficiency of facts and lack of jurisdiction of the court over the subject matter of the action.

The trial court sustained all the demurrers and the plaintiffs elected to stand upon their complaints and judgment was entered against the plaintiffs who now appeal to this court.

The jurisdiction of the trial court was challenged on the ground that neither paragraph of complaint alleges facts which entitled plaintiffs to relief under the declaratory judgments act. By jurisdiction of the subject matter is meant jurisdiction of the class of cases to which the particular case belongs. *State ex rel. Felthoff* v. *Richards* (1932), 203 Ind. 637, 650, 180 N. E. 596; *McCoy* v. *Able* (1891), 131 Ind. 417, 30 N. E. 528, 31 N. E. 453. The declaratory judgments act gives all courts of record jurisdiction in declaratory judgment cases. § 3-1101, Burns' 1933. Section 2, of the declaratory judgments act provides that "Any person interested under a . . . will . . . may have determined any question of construction or validity arising under the instrument, . . . and obtain a declaration of rights . . . thereunder . . . ." § 3-1102, Burns' 1933.

Section 4, of the declaratory judgments act also specifically provides for determination of any question arising in the administration of an estate or trust, including construction of wills. § 3-1104 (c), Burns' 1933. Use of the declaratory judgments statute in cases such

as this has been recognized by this Court. *Weppler* v. *Hoffine* (1940), 218 Ind. 31, 36, 29 N. E. (2d) 204, 30 N. E. (2d) 549. Being a court of record the trial court had jurisdiction of the subject matter and the facts alleged were sufficient to justify exercise of such jurisdiction.

Appellants assert that the will here involved does not create a public charitable trust, and upon the validity of this proposition depends the application of the other rules of law which are controlling in the decision of this case. They assert that the trust is not a public charitable trust, because it is limited in its operation to too small a group. They say further that it is a private trust to perpetuate the memory of the testatrix's deceased brother.

Trusts for the promotion of education are almost universally held to be charitable. In the Restatement of the Law of Trusts, § 370, p. 1146, it is stated: "A trust for the advancement of education is charitable," and in the comment following it is pointed out that trusts for the promotion of education include trusts "to establish scholarships or otherwise to assist students in acquiring education."

Bogert, in his work on Trusts and Trustees, says in Vol. 2, § 374, p. 1164, "There has never been any doubt that trusts to advance education are charitable," and at page 1168 says that aid to students through scholarships, is clearly within the rule that trusts to advance education are charitable.

The Foley will clearly dedicates her entire residuary estate to the promotion of education. Item VII gives the residue of testatrix's estate to a competent trustee, provides for a small annuity to a friend and then says, "The remainder of the trust property, including that not used for said monthly payments, shall be used to

promote college or university education to children of the employes of the Pennsylvania Railroad Company living in the City of Fort Wayne, Indiana," and Item VII closes with the sentence, "This fund shall be administered as aforesaid until completely exhausted."

Appellants say, however, that the class from which beneficiaries under Item VII of the Foley will must be selected is too small and narrow to permit the trust to be called a public charitable trust, even though for promotion of education, but under the authorities this is an objection only where the class is so small that the purpose is not a benefit to the community. Restatement of the Law of Trusts, § 370, pp. 1148, 1149. The complaint in this case does not state any facts to indicate the size of the class which will benefit by the trust created by the Foley will. We have no way of knowing how many employes of the Pennsylvania Railroad Company live in Fort Wayne, but we may presume that if facts of this kind favorable to appellants could properly have been pleaded they would have been. However, even with all the facts before us, we would not know where to draw the line. If education of a boy or girl, or boys and girls, is beneficial to the community the size of the group from which they are selected can make no difference. So long as the beneficiaries are uncertain or indefinite, but ascertainable, and their education will result in benefit to society, the charitable trust test has been met.

Appellants likewise contend that under the administrative provisions of Item VII of the will only one child at a time may be a beneficiary. They argue that this means that only one child every four years will be educated from the Foley trust, and that this is not enough to constitute the required public benefit. Appellees contend that the language of the will

does not limit the number of beneficiaries to one boy or girl at a time, but even if the beneficiaries were so limited we are not prepared to say that the education of only one child every four years would not be a benefit to the community. If the trust income were sufficient for only one boy or girl at a time, and only one boy or girl at a time could be educated from the proceeds of this fund, it would not occur to us that benefit to the community would not result.

Appellants further point to the language of Item VII of the Foley will, which reads as follows, "This is done by me in memory of and in honor of my deceased brother, Thomas J. Foley, a former Pennsylvania Railroad employee," and they say that this language indicates that testatrix's purpose was not charitable but was to perpetuate the memory of her brother. This makes no difference. The true test of a public charitable trust is the object sought to be attained, and not the motive of the donor. Restatement of Law of Trusts, § 368d, p. 1142; *Scobey* v. *Beckman* (1942), 111 Ind. App. 574, 580, 41 N. E. (2d) 847.

Appellants argue earnestly that the plan of administering the trust specifically set out in Item VII of the will, fixes unalterable limits upon the use of this fund and necessarily means that over half the income will not be used for trust purposes, but will accumulate in perpetuity, and that over half the trust fund is not actually dedicated to charity, because under the administrative provisions of the will it will not be needed for that purpose. They allege that there is $90,000.00 to $100,000.00 of personal and real property and that it will yield an annual income of $3,500.00. They point out that during the life of Bernadette Monahan $480.00 a year will go to her, and they also argue that under the administraitve terms of the will only one child at a

time may benefit and that child may benefit in a sum not in excess of $800.00. They assert that over half of the trust fund, and the income therefrom, is therefore left without provision for its charitable use, and therefore the trust violates the rules against perpetuities, restraints on alienation, remote vesting and unlawful accumulations and is void, at least as to the excess, and that the testatrix died intestate to the extent the trust is void.

These contentions lead to a consideration of the *cy pres* doctrine and its possible application to the situation before us.

The doctrine of judicial *cy pres* permits a court of equity to direct the use of property, given to a charity, to as nearly the same purpose as possible, when the original plan or trust becomes impossible or inexpedient or illegal.

In the Restatement of the Law of Trusts, § 399, p. 1208, the doctrine of *cy pres* is spoken of in the following language:

"If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."

The *cy pres* doctrine has been the subject of numerous decisions by this court and the decisions have not been free from contradiction and confusion. It seems clear, however, that the doctrine of judicial *cy pres*, as distinguished from prerogative *cy pres*, is now well established in this state. *Erskine* v. *Whitehead, Executor* (1882), 84 Ind. 357, 364, 365, 366; *Richards* v. *Wilson*

(1916), 185 Ind. 335, 398, 399, 112 N. E. 780; *Crawfordsville Tr. Co.* v. *Elston Bk. & Tr. Co.* (1939), 216 Ind. 596, 25 N. E. (2d) 626.

In the case of *Richards* v. *Wilson, supra,* this court in discussing the *cy pres* doctrine and its application in that case used the following language:

"The court's findings and the application of the law thereto are in the broad spirit of the rule of equity that where a charitable purpose, as here indicated, is the very essence of what the donors intended, a court of equity will see to it that such purpose shall prevail rather than be destroyed, and will lend its aid to carry out that purpose, if not with exactness as to details as outlined, then as near as may be."

In the case of *Crawfordsville Tr. Co.* v. *Elston Bk. & Tr. Co., supra,* this court used the following language on page 614:

"The doctrine of *cy pres,* as applied in the United States, is the doctrine of approximation. 10 Am. Jur. 676. To this extent our courts have certainly applied the doctrine in the interpretation and construction of charitable gifts."

Before considering the language of the will for the purpose of construing it, it will be helpful to have in mind some of the general rules applicable to a determination of the rights of adversary parties under a will or under a trust created by a will. The courts of this state have often held that gifts to charitable uses are favored and are to be construed by the most liberal rules that the nature of each case, as presented, will permit, rather than that the gift should fail and the charitable purpose of the donors be not accomplished. *Richards* v. *Wilson, supra,* and numerous cases cited. *Crawfordsville Tr. Co.* v. *Elston Bk. & Tr. Co., supra.* Another well established rule

is that the sole purpose of the court in construing a will is to ascertain the intention of the testator as the same appears from the full and complete consideration of the entire instrument. *Peirce* v. *Farmers State Bank of Valparaiso* (1943), 222 Ind. 116, 121, 51 N. E. (2d) 480. All parts of the will must be construed together, to form, if possible, one consistent whole, and if, by such consideration, the intention of the testator is apparent his intention must prevail unless it be in conflict with established rules of law. *Crawfordsville Tr. Co.* v. *Elston Bk. & Tr. Co., supra.*

The problem before us, therefore, is to apply these rules and determine the intent of Miss Foley when she made her will and then to apply the *cy pres* doctrine if that is necessary to effectuate the general intent and purpose of the testatrix. Did she intend that over half of her property, or the income therefrom, should go to the remote heirs who are plaintiffs in this action, or did she intend that the entire residue of her estate should be devoted to the education of children of employees of the Pennsylvania Railroad Company living in the City of Fort Wayne, Indiana? Again reading Item VII of her will, it seems to us we cannot read into the will any intent upon her part to have the larger part of her estate pass to appellants. She says specifically that "the remainder of the trust property shall be used to promote college or university education of children of employees of the Pennsylvania Railroad Company . . . ." This means all of the remainder. She then outlines certain administrative directions and concludes the trust item with this paragraph: "This fund shall be administered as aforesaid until completely exhausted." At no place in her will does she mention the plaintiffs in this action. She does mention several friends from which it may be deduced

that she was considering the persons who might be the proper objects of her bounty. In such consideration her kinfolk would naturally be considered. But nothing was given to them by the terms of this will. Had she wanted them to have a part of her estate she could easily have so provided. So it is our conclusion that she had no intent to leave any part of her estate to appellants. Any other conclusion means that she died intestate as to part of her estate, and a conclusion resulting in partial intestacy is to be avoided if possible. *Burke, Exr.* v. *Crawfordsville Tr. Co., Admr.* (1936), 103 Ind. App. 1, 5, 2 N. E. (2d) 817; *Dykeman* v. *Jenkines* (1913), 179 Ind. 549, 101 N. E. 1013, and cases cited.

Having determined Miss Foley's intent as disclosed in the language used in her will, the *cy pres* doctrine may be applied to obviate difficulties flowing from the administrative provisions in the will.

Under the *cy pres* doctrine where the dominant intent of the testator is determined and is about to fail because of administrative provisions which render the general plan illegal, courts of equity have the power and duty to modify the administrative provisions so that the dominant purpose of the testator may be carried out. *Reasoner* v. *Herman* (1921), 191 Ind. 642, 653, 654, 134 N. E. 276; *Richards* v. *Wilson, supra; Burke, Exr.* v. *Crawfordsville Tr. Co., Admr., supra;* Restatement of the Law of Trusts, § 399a, p. 1208, 1209. That administrative directions must give way to the dominant intent and purpose of the testator is shown in the following language quoted from pages 393 and 394 of the opinion in the case of *Richards* v. *Wilson, supra:*

"So the principles of construction applied to public charities have evolved the judicial *cy pres* doctrine and under its application in circumstances like those here, the courts are required to look beyond the institution, or trustee, particularly

designated to administer the property given *and
the particular manner in which it is to be admin-
istered.* And if it appears that the latter were the
real objects of the donor's bounty, the trust will
survive the failure of the particular trustee and
*the particular method of administering the trust* if ·
the court can secure a trustee to carry into effect
as near as may be the dominant purpose of the
donor." (Our italics.)

In this connection language used by Professor Bogert
in his treatise on the Law of Trusts and Trustees, Vol.
2, § 441, p. 1340, is suggestive and instructive:

"If the charitable fund becomes excessive for the
purpose of carrying out the settlor's wishes in the
way he prescribed, the court will usually extend
the charity by increasing the amount of the bene-
fits to be given to each individual in the class or by
adding a larger number of persons to the class to
be helped."

We therefore hold that the dominant intent and pur-
pose of Miss Foley's will was to devote her entire resid·
uary estate to the education of children of
Pennsylvania Railroad employees and that the
*cy pres* doctrine is applicable. If in executing the
trust there shall be excess income or excess assets, the
same may be used to carry out the dominant charitable
purpose of the testatrix, under directions of the proper
court in the exercise of its equity powers over trusts.

Appellants further attack the validity of Item VII
of the will upon the ground that unlawful accumulations
will result and the rules against remote vesting, per-
petuities and restraints on alienation are violated. These
contentions are predicated upon appellants' theory,
which we have already discussed, that the trust involved
is not a public charitable trust, but a private trust, and
that the dominant charitable purpose manifested by

Miss Foley's will must yield to the language of the will which limits payments for educational purposes to $800.00 per annum. When we held that the will created a public charitable trust, and that the administrative provisions may be modified to save the dominant purpose of the testatrix, we substantially answered each of these subsidiary questions raised by appellants.

As we have already seen the rule against accumulations does not apply to accumulations for charity. These are, instead, subject to the orders of a court of equity, which may, in the exercise of its *cy pres* power, either at the outset or after some accumulation has taken place, interfere, should the accumulation be unreasonable, unnecessary, or to the public injury. *Reasoner* v. *Herman, supra,* at pages 653 and 654.

It is well established in Indiana that the rule against perpetuities does not apply to vested charitable trusts, such as we have found this trust to be. *City of Richmond* v. *Davis* (1885), 103 Ind. 449, 454, 3 N. E. 130; *Dykeman* v. *Jenkines, supra; Reasoner* v. *Herman, supra; Herron* v. *Stanton, Admr.* (1922), 79 Ind. App. 683, 696, 128 N. E. 363; *Barr* v. *Geary, Auditor* (1924), 82 Ind. App. 5, 30, 142 N. E. 622.

In considering when Miss Foley's residuary estate vested in the charitable trust which we have held was created, it may be pointed out that in construing a will, if there is any doubt as to when the testator intended the property to vest in his residuary beneficiaries, it will be construed to vest the property at the testator's death. *Reasoner* v. *Herman, supra; Herron* v. *Stanton, Admr., supra; French* v. *French* (1915), 58 Ind. App. 621, 108 N. E. 786. From Miss Foley's will it seems clear that it was her intent that

her residuary estate should vest at the time of her death without resorting to the rule of construction just referred to. She starts Item VII of her will with the unqualified statement that, "All the rest, residue and remainder of my property, both real and personal, wherever situated, I will, bequeath and devise to the Peoples Trust and Savings Company of Fort Wayne, Indiana, in trust, . . . ." This positive giving of all the trust property to the trustee constitutes an immediate vesting of the title in the trustee and the beneficiaries. *Herron* v. *Stanton, Admr., supra; Dykeman* v. *Jenkines, supra; Richards* v. *Wilson, supra.*

It is also the law in Indiana that the rule against restraints upon alienation does not apply to public charitable trusts, *City of Richmond* v. *Davis, supra;* but even if it did there is no restraint imposed by the language of Item VII of Miss Foley's will. As a matter of fact specific right is given to the trustee to sell the property given to it "as needed and as it thinks advisable." It is argued by appellants that because of the $800.00 limit upon expenditures for educational purposes there would never be any *need* to sell the property, but with the modification of that administrative limitation to conform to the dominant charitable purpose of the testatrix, appellants' argument with reference to restraint upon alienation fails. It may be added that the "need" referred to in Miss Foley's will is not necessarily a need for the money to be derived from such sale for use in carrying out the purpose of the trust. It may just as well be a "need" created by a conviction that a sale is necessary for the protection of the trust estate; a "need" to sell trust assets which a good trustee thinks are becoming of doubtful value, and such "need" for a sale would be just as urgent as need for additional money to be

expended in carrying out the dominant purpose of the trust.

For the reasons stated we cannot agree with the theory of appellants' several paragraphs of complaint and we think the demurrers thereto were properly sustained.

Therefore the judgment is affirmed.

NOTE.—Reported in 60 N. E. (2d) 281.