## Trustees Stewart Common School Fund v. Lewis, Superintendent.

## Stewart's Executors v. Trustees Stewart Common School Fund.

(Decided March 14, 1930.)

L. A. FAUREST and L. A. FAUREST, Jr., for Trustees Stewart Common School Fund.

J. R. LAYMAN and R. M. LAYMAN for appellees.

OPINION OF THE COURT BY JUDGE GRIGSBY—Affirming in part and reversing in part.

These actions were instituted in the Hardin circuit court to have the court determine the effect of two deeds of trust executed by John H. Stewart, deceased, and to direct the proper administration and distribution by the trustees of the trust fund. The first deed of trust was executed on November 7, 1879, and conveyed seventeen shares of $100 each of the capital stock of the Louisville & Nashville and Great Southern Railroad Company to trustees. He appointed M. H. Cofer, a former judge of the Court of Appeals of Kentucky, W. D. Wood, the common school commissioner of Hardin county, and himself, John H. Stewart, as trustees. He provided that this seventeen shares of stock should be held by them and their successors forever, and to be known as the Stewart common school fund for Hardin county. He provided that "the devidends of said stock shall annually be pro-rated or divided equally between every common school child in Hardin county in the pupil age." He also provided for the organization of the trustees and the method

of filling vacancies, and made other provisions which will be discussed later on in this opinion.

On October 3, 1905, John H. Stewart, the donor, executed another trust agreement, in which he refers to the first trust agreement and the seventeen shares of stock in the Louisville & Nashville and Great Southern Railroad Company, and says: "Whereas said stock has been added to from time to time until there are now forty-five shares held by me as trustee." In this second agreement he also donated for the benefit of the common schools of Hardin county one bond of the Louisville Home Telephone Company for the sum of $500 and two bonds of the Louisville Home Telephone Company for the sum of $100 each, making in all $700. Both trust agreements were properly acknowledged and recorded. Other provisions contained in these writings will presently be further discussed.

It appears from the record that the trustees under the deeds of trust hereinabove set out paid out of the income to the county superintendent of schools each year two cents per capita for every common school child of pupil age in Hardin county. This payment was much less than the income produced by the trust fund, and thus a surplus was created. Just as an illustration of how this surplus is accumulating: For the year 1926 the income was $590.50, and the amount paid out was $128.14, leaving a surplus of $462.36 for that year. In the year 1928 the income was $790.85, the amount paid out $125.-58, leaving a surplus of $665.27 for the year 1928. The $700 in bonds of the Louisville Home Telephone Company, with its accumulations, amounted to $1,821.92. The surplus created by the Louisville & Nashville Railroad stock from 1922 to 1929 amounted to $3,582.75, while the amount of accumulations on the Louisville & Nashville stock prior to 1922 amounted to $2,637.93. In addition to the cash accumulation, the Louisville & Nashville Railroad Company had declared a stock dividend of 62½ per cent.

It is contended by the heirs and executors of John H. Stewart:

(1) That all of the property now held by the trustees, with the exception of the seventeen shares of the railroad stock mentioned in the first deed, was held under the terms set out in the second deed, and that the income therefrom should be used only for the purpose of supplementing the income from the seventeen shares of stock

to the extent necessary to make two cents per capita for the common school children of the county; that the funds had so increased that there was no possibility of any of the property governed by the second deed being necessary to produce a yearly income sufficient to pay that amount; and that, because of these facts, the trust to that extent had failed.

(2) That as to the seventeen shares of the Louisville & Nashville stock there was a diversion and use for purposes other than those set out in the deed, and that under the terms of the first deed of trust the seventeen shares of Louisville & Nashville stock and all income thereon was terminated, and the executors of John H. Stewart were entitled to that stock.

The school teachers and school authorities contend:

(1) That all of the railroad stock was held under the first deed of trust, and that only $700 in bonds mentioned by the second deed of trust was conveyed by that deed.

(2) That there had been no intentional diversion of the funds such as would terminate the trust created by the first instrument.

(3) That there was a probability that the number of pupils might increase, and therefore the income from the $700 in bonds might be needed, and therefore the $700 in bonds should not revert.

The trial court in an able and well-written opinion, which was made a part of the record, held:

(1) That there had been no intentional misuse or diverting the funds, and the reverter provided in the first trust article does not take effect.

(2) That the entire twenty-eight shares of Louisville & Nashville stock mentioned in the second instrument which, according to Mr. Stewart's recital, he had added to the seventeen shares from time to time, making in all forty-five shares of Louisville & Nashville stock properly belonging to the first trust fund and constituting a part (or corpus) of that fund. That all of the stocks, securities, and funds held by the trustees arising from income on the forty-five shares of railroad stock, and representing the accumulations on it, including the stock dividends, should be disbursed to the teachers of Hardin county under the terms of the original trust.

(3) That it is impractical now to go back and make an exact disbursement of the funds that should have been disbursed prior to the school year 1922-23, and that

the income from the funds should now be distributed for each year beginning with the school year 1922-23 and each succeeding year down to the time of its distribution. The income of each particular year to the teachers of that particular year, according to the number of pupil children; the stock dividend of 62½ per cent. being treated as income, and going to the teachers entitled to it under this plan. That the balance of the income accumulated prior to the school year 1922-23 should be distributed among all the teachers who have taught during the period from 1922-23 to the time of the distribution and to make the distribution according to the total number of pupils in the district taught by them during the whole period.

(4) That the $700 Louisville Home Telephone Company bonds, which with the accumulations amount to $1,821.92, should revert to the trustees of John H. Stewart, as these bonds were controlled by the second deed of trust, and could be used only in case the provisions made in the first deed of trust did not pay as much as two cents per pupil, and there being no probability that it would be needed for that purpose.

The case was referred to the master commissioner, who filed a report showing the present status of the fund, and judgment was entered in accordance with the opinion of the court as above set out. Both sides appeal.

In the first deed of trust the purpose is clearly set out in the following language:

"Having an earnest desire for the prosperity of the common schools of Kentucky and especially in my native county Hardin and for the purpose of a more fully developed interest in the cause of common school education in said county, I have this day granted and by these presents do hereby convey seventeen shares of one hundred dollars each of the capital stock of the Louisville and Nashville and Great Southern Railroad Company and have this day appointed Hon. M. H. Cofer, myself John H. Stewart and W. D. Wood the now present and acting common school commissioner of Hardin county as trustees of said seventeen shares to be held by them and their successors forever and to be known as the Stewart Common School Fund for Hardin County. The dividends of said stock shall annually be prorated or divided equally between every common school child in Hardin county in the pupil age."

We are of the opinion that the purpose of the donor is clearly expressed in the above-quoted language. The only provision for a reverter of funds in either of the deeds of trust is in the first one, and is set out in the following language:

"Under no condition, consideration or circumstance shall the said stock or any part of it or the dividends thereof be divided or used for any other purpose except for the purposes named in this conveyance, and whenever it shall be ascertained that any part of this said stock or the dividends thereof shall be intentionally diverted (no matter how small) or used except for tuition of common school children of Hardin county then this conveyance is to cease, and be null and void, and the said stock shall be returned by the common school commissioner of Hardin county to myself if living, if not then to my legal representatives."

The record discloses that prior to the year 1922 the teachers were paid on a per capita basis, and since the year 1922-23 the common school teachers of Hardin county have not been paid on a per capita basis, but the basal salary (as shown by the deposition of superintendent taken October 17, 1928) is $60 per month and an additional salary based on certain high school credits, standard college credits, teaching experience, and other qualifications. The fund out of which the teachers were paid consists of the per capita tax received from the state and certain taxation. Out of this fund is paid not only the teacher's salary but the expense of operation of schools plants, maintenance, and other charges. It appears from the record that two cents per pupil had been paid to the county superintendent each year from the Stewart fund, and this two cents, together with the state per capita tax and one-half of the money raised by local taxation, went to pay the teachers of Hardin county. While this method of administering the income from the Stewart fund was perhaps not in strict accord with the plans of the donor, yet the money from the Stewart fund went into this teachers' fund, and was paid to the teachers in that way. We are of opinion that this method of handling the income from the Stewart fund did not "intentionally divert or use except for tuition of common school children of Hardin county" any part of the income from

the Stewart fund, and the trial court was correct in his ruling that there was no reverter.

There were seventeen shares of the Louisville & Nashville Railroad stock donated at the time of the execution of the first trust agreement. In the second trust agreement Mr. Stewart says: ''Said stock has been added to from time to time until there are now forty-five shares of stock held by me as trustee.''

We are of opinion that this twenty-eight shares of railroad stock was added before the execution of the second trust agreement, and that the entire forty-five shares of railroad stock, now held by the trustees, properly belonged to the first trust fund, and constitute the principal (or corpus) of that fund, and are subject to all the conditions of that trust agreement. Wardens, etc., of St. Paul's Church v. Attorney General et al., 164 Mass. 188, 41 N. E. 231. We are further of the opinion that the only limitation placed on the amount to be distributed from the income under the first trust agreement was and is when the annual income from this forty-five shares of stock amounted to more than one cent and less than two cents per pupil child in Hardin county. In the event that the annual income from this stock is more than one cent and less than two cents per pupil child in Hardin county, then one cent per pupil child is to be distributed, and the fractional part under two cents per pupil child to be reinvested. However, when the annual income equals to or exceeds two cents per pupil child in Hardin county, then, under the language of the donor, ''the dividends of said stock shall annually be prorated or divided equally between every common school child in Hardin county in the pupil age.''

As the ruling of the court on this point is in accord with this opinion, it follows that the trial court correctly ruled.

This record discloses that the teachers of Hardin county and the number of pupils in each district may be ascertained with practical accuracy for the school year 1922-23 and each succeeding year to the present time. Under the authority of 6 Cyc. p. 956; Gills' Executor v. Woman's Club of Louisville, 205 Ky. 731, 266 S. W. 378, we are of opinion that a court of equity is given power and some discretion to distribute the surplus income accumulated from the dividends on this stock, including the stock dividends and also interest or other income resulting therefrom.

We are therefore of the opinion that the trial court correctly ruled in holding that the plaintiffs, as trustees of the Stewart fund, should pay to the superintendent of schools of Hardin county the amount of the net income heretofore received by them from the forty-five shares of railroad stock, less the amount already paid, and that same should be distributed among the teachers of Hardin county as follows: Beginning with the school year 1922-23 to the present time, the net income from the forty-five shares of stock shall be distributed to the teachers of common schools of Hardin county each year in proportion to the number of pupils enumerated in each district for the respective year. We are also of opinion that prior to 1922 the names of the teachers and the amount due each cannot be ascertained with any degree of certainty, and that the entire fund accumulated from the income of the forty-five shares of stock should be put into a common fund, and distributed to the school teachers of Hardin county for the school years beginning 1922-23 to the present time in proportion to the total number of school children enumerated in the respective districts taught by them during said time. The stock dividends on the stock of the Louisville & Nashville Railroad Company should be treated as income for the year in which it was declared, and should be sold by the trustees and the proceeds paid to the county superintendent and distributed as hereinbefore indicated. Also all accumulations from income on the forty-five shares of railroad stock shall be treated as income as of the date of accumulation, and also securities held for said accumulations should be sold by the trustees and distributed in accordance with this opinion.

We are of the opinion that the trial court erred in adjudging that the purpose of the gift of the $700 in bonds of the Louisville Home Telephone Company made by the second deed of trust has failed, and that the bonds and the income and accumulations therefrom have reverted to the estate of the donor, John H. Stewart. The second deed of trust provides:

"Said trustees shall collect the income from the said twenty-eight shares of stock and bonds and each year shall pay over to the superintendent of common schools of said county a sufficient amount of said income so that said amount when added to the income from said seventeen shares shall pay two

cents per capita for each common school child of pupil age in said county as shown by the common school census and said county school superintendent shall pay said two cents per capita to the teachers of the common schools of said county. All the income from said twenty-eight shares of stock and from said bonds that shall not be required in order to make up said per capita of two cents as aforesaid shall be allowed to accumulate and be reinvested by said trustees as rapidly as possible in other good stocks of securities which shall be held in the same way and the income therefrom appropriated in the same way as the aforesaid twenty-eight shares of stocks and bonds.''

We are of the opinion that the twenty-eight shares of stock referred to and the income therefrom are controlled by the first deed of trust, and that only the $700 in bonds and the income therefrom are controlled by the second deed of trust. This $700 in bonds is a guarantee of the payment of at least two cents annually for each common school child of pupil age in Hardin county. This record discloses that for the year 1928 there was in Hardin county 5,073 pupils of common school age. In our opinion, there is no way to judge with certainty as to how much decrease or increase future years may bring. The donor acted wisely in the investments which he made for the benefit of this fund, and the investment has returned a regular income; yet, as the years roll by, there is no way to tell how long this investment will continue to pay a dividend. In our opinion, the $700 in bonds should continue to be held in trust, the income from said bonds to be used, if necessary, in making up any deficit of the two cents provided for in the second deed of trust to be paid annually for each common school child in Hardin county of the pupil age, but, if this income is not needed for that purpose, then it should be placed in a ''subsidiary fund;'' the interest from the ''subsidiary fund'' to be paid to the county superintendent and distributed annually just as the income from the forty-five shares of railroad stock has been hereinbefore adjudged. 11 C. J. sec. 78, p. 363; Wardens, etc., of St. Paul's Church v. Attorney General, supra. However, if at any time in the future it clearly appears that the income from the $700.00 fund will never be needed to make up the two cents per capita, the heirs of the donor may enforce their rights to this fund and the accumulations thereon.

In the case of Theological Education Society v. Attorney General, 135 Mass. 285, the testator by his will devised to trustees two stores in Boston to be held in trust, and to apply the net rents and income to the maintenance and support of indigent students in theology, in sums not exceeding at the rate of one hundred to one hundred and fifty dollars per annum to each student. He also provided that, if the rents or income should be used for any other or different purpose or object, then there should be a reverter. It appears that the income from the trust estate had largely increased, and that there had not been a sufficient number of indigent students to exhaust the whole income, and that a large surplus had accumulated and was still accumulating. In that case the court said:

"That the court can authorize the trustee to apply the surplus according to the general intent and purpose of the testator, but to vary from the precise mode pointed out by him, because otherwise the general intent will be defeated. The testator gave a portion of his estate to a public charity in which he felt a deep interest; it is clear that he intended that 'all the net rents and income' should be appropriated to the aid of indigent students in theology at Cambridge. Undoubtedly he supposed that there would be a sufficient number of such students to absorb the whole income, if each received a sum no larger than one hundred and fifty dollars per annum. But the circumstances and conditions have changed, and there is a constantly increasing surplus. . . . The general charitable purpose of the donor ought not to fail because an incidental direction as to the mode of administering the charity cannot be strictly carried out. In cases like this, where there is an unexpected surplus, courts of equity have authorized the application of the surplus, by increasing the number of the charitable objects, or by increasing the amounts paid to the beneficiaries."

In our opinion, in the future, when the income from the forty-five shares of stock and the "subsidiary fund" is sufficient to pay the two cents or more per pupil child, the same should be distributed annually by the county superintendent of schools, and paid direct to the teachers of Hardin county, in addition to their regular salary.

If the income produced by the forty-five shares of stock is less than two cents per pupil child, that it should be supplemented to that extent from the "subsidiary fund" herein created.

Inasmuch as this suit was necessary for the proper construction of these trust agreements, we are of the opinion that the entire cost of this action should be paid out of the surplus which has heretofore been created, the amount to be determined by the trial judge. It is therefore ordered that the judgment of the trial court be affirmed, except in so far as he held that the $700 in telephone bonds and accumulations be reverted, and to that extent the judgment is reversed for proceedings consistent with this opinion.