THE HARTFORD NATIONAL BANK AND TRUST COMPANY, TRUSTEE (ESTATE OF PHILIP A. ROGERS) *v.* BILLINGS P. LEARNED MISSION ET AL.

SUPERIOR COURT     NEW LONDON COUNTY     FILE No. 27270

Memorandum filed May 15, 1961

*McGarry, Fox & Condon,* of New London, for the plaintiff.

*Merrill S. Dreyfus,* of New London, for American Red Cross.

*Foster K. Sistare* and *Joseph F. Regan,* both of New London, for The First Congregational Church.

*Richard F. Corkey* and *Arthur Barrows,* both of New London, for Billings P. Learned Mission.

*Albert L. Coles,* attorney general, and *Carl D. Eisenman,* assistant attorney general, for the state.

*Abram A. Washton* and *Arno R. Vogt,* both of New London, for Shriner's Hospital.

TROLAND, J. This is an action for construction of the will of Philip A. Rogers, late of New London.

Philip A. Rogers died in New London, Connecticut, April 26, 1946, leaving a last will and testament dated May 1, 1945. Administration of his estate was completed in the Probate Court for the district of New London on November 7, 1947, at which time the trust set forth in paragraph 46 of said will commenced by the acceptance of the trust by the then trustee, The National Bank of Commerce of New London. The plaintiff is successor trustee of said trust.

After numerous bequests with which we are not concerned, the residuary clause, paragraph 46 of said will of Philip A. Rogers, reads as follows: "46. All the rest and residue of my estate, I give, devise and bequeath unto the National Bank of Commerce of New London, Connecticut, to be held in trust by it, for the following uses and purposes; to invest, reinvest, to buy, sell or exchange securities, which in its opinion, would be satisfactory for the objects of this trust, and to hold the same as a

trust to be known as "The Philip A. Rogers Foundation", and to expend the income thereof as follows: (1) To deduct its lawful charges for its work in the administration of this trust and the other trusts mentioned in this will. (2) If possible, to add to the principal of this trust approximately twelve (12) percent, each year, of the net income thereof for the purpose of increase in the principal. (3) From said income, to pay to my housekeeper, Alice Pollard, the sum of Six Hundred ($600.00) Dollars each year during her lifetime, in monthly payments of Fifty ($50.00) Dollars each on the first day of each month. (4) I direct my said trustee to pay from the income of said trust fund, the following sums of money to the following organizations; Billings P. Learned Mission of New London, Twenty-five ($25.00) Dollars, each year; to pay to the New London Day Nursery, the sum of Twenty-five ($25.00) Dollars each year; to pay to the Shriner's Hospital in Springfield, Massachusetts, the sum of Fifty ($50.00) Dollars each year; to pay to the trustees of Bulkeley School of New London, the sum of Ten ($10.00) Dollars each year, to be used as a prize for the best student in Algebra; to pay to the American Red Cross, New London Chapter, the sum of Twenty-five ($25.00) Dollars each year; to pay to the Pequot Council of Boy Scouts, New London, Connecticut, the sum of Fifty ($50.00) Dollars each year; to pay to the New London Lodge of Elks, the sum of Twenty-five ($25.00) each year for charitable purposes; to pay to each one of the following churches, located in New London, the sum of Twenty-five ($25.00) Dollars each year; The First Congregational Church, The Second Congregational Church, The Methodist Church, The Montauk Avenue Baptist Church, Saint James Church, Saint Mary's Church, Saint Joseph's and the Shiloh Baptist Church. (5) My said trustee is empowered to make a pro rata reduction in the payments set out in

sub paragraph 4 of this paragraph (46) when it appears to said trustee that the net income from said trust will not provide for full payment in any year."

Each year 12 per cent of the net income as mentioned in paragraph 46(2) of said will has been added to the principal of said trust. The Alice Pollard named in paragraph 46(3) died on May 1, 1958. The value of the corpus of the trust on September 26, 1949, was $32,728.60, and the value of the same as of July 1, 1960, was $65,591.94. The surplus of income on hand as of said date was $5595.04.

It is to be noted that the income from the trust funds has increased each year and has been more than sufficient to provide for all the payments specified by the testator in said trust, resulting in the surplus above stated. The provision in paragraph 46(5) authorizes the trustee to make a pro rata reduction in the payments to beneficiaries named in subparagraph 4 when the income will not provide full payment in any year. While there is no provision for an increase in said annual payments, there is no provision prohibiting the trustee from increasing the amounts specified therein.

Questions have arisen as to the disposition of the accumulated surplus income in the hands of the trustee. The principal question is whether the trustee can be permitted to increase the annual payments to the beneficiaries named in subparagraph (4) of paragraph 46 of the will.

It is fundamental that the ascertainment and effectuation of the intention of the testator is controlling in the construction of wills. *Daboll* v. *Moon*, 88 Conn. 387, 391. This intention is to be ascertained from the words or language of the testator. *White* v. *Smith*, 87 Conn. 663, 668. The entire will is to be read in arriving at intention. *Mitchell* v. *Reeves*, 123 Conn. 549, 556. The language or words of the

will are to be read in the light of the circumstances under which the will was written. *Bulkeley* v. *Worthington Ecclesiastical Society,* 78 Conn. 526, 533. So construed, the will in this case clearly indicates that the underlying intent of the testator in disposing of the bulk of his estate was charitable in nature. Where there was a possibility of a lapsed legacy, he provided that it fall into the residue, which is entirely devoted to charity except for a small life estate which has since terminated.

The testator intended that the charitable bequests to those named in paragraph 46 be continued as long as the charities remained in existence, as evidenced by his specific direction to decrease the amounts given to each proportionately if the income was insufficient to pay the bequests in full. The testator intended to limit the accumulation of surplus to 12 per cent of the income annually. He failed to provide for accumulation of income beyond the 12 per cent. The addition of 12 per cent of the income to the principal each year should ensure that there will be no failure in the payment of the bequests. The sole purpose of the trust is to give assistance to the organizations named in their public charitable work. The purpose is not to build a fund, but to spread the earnings thereof. In the course of time, the income of the fund has proven to be in excess of what is required to make the payments to the beneficiaries. Although the testator did not provide for an increase in the charitable bequests in question in the event of such surplus income, it either was an oversight or he did not expect the trust to be able to accumulate such surplus.

It has been stated authoritatively that "[w]here the testator has provided that certain sums shall be paid to a certain number of persons, and the income is or becomes more than sufficient for the purpose, the court has sometimes directed that larger sums

shall be paid to the same number of persons, and has sometimes directed that the same amounts shall be paid to a larger number of persons." 4 Scott, Trusts (2d Ed.) § 400, p. 2858. In Connecticut, it has been established that a trustee, in fulfilment of its duty to give effect to the testator's intentions as apparent from the will, may use surplus income to bestow upon the charities named additional benefits in proportion to their original shares. *Hoyt* v. *Bliss,* 93 Conn. 344, 353; see note, 157 A.L.R. 903.

In accordance with the above, the trustee is advised that it may increase the annual payments to the beneficiaries named in subparagraph (4) of paragraph 46 of said will. The trustee should pay to the trustees of Bulkeley School the back payments due to this beneficiary. After the deductions of costs and expenses authorized, the trustee should now distribute the remaining surplus of income to all the charities in proportion to their specific bequests. This should include the trustees of Bulkeley School. In the future, all income in excess of the 12 per cent to be added to the principal should be distributed to all said charities annually in proportion to their original shares.

The trustees of Bulkeley School are authorized to award an annual algebra prize in the name of "The Philip A. Rogers Foundation" to a high school student in New London, of $10, or in their discretion to increase the award, or add additional algebra prizes for such students in so far as additional income will permit.

There are allowed, out of the surplus funds of said trust, the sums for expenses and counsel fees to be fixed in a supplemental memorandum after consultation by the court with counsel.

Judgment may enter in accordance with this memorandum.