346 So.2d 409 (1977)
CRIPPLED CHILDREN'S FOUNDATION
v.
Mrs. Sue CUNNINGHAM et al.
SC 2176.
Supreme Court of Alabama.
May 20, 1977.
James C. Barton and Henry J. Swedlaw, of Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, for appellant.
Joseph A. Lee, of Lee & Lee, Scottsboro, for appellees.
SHORES, Justice.
This appeal is from a judgment entered in an action brought for the construction of the joint will of Sam P. Hinshaw and Thelma G. Hinshaw. The plaintiffs are the heirs and next of kin of the Hinshaws, who filed the action against W. R. Hinshaw, as executor and successor trustee under the last will and testament of Mrs. Thelma G. Hinshaw, the Baptist Children's Home in Troy, Alabama, and the Crippled Children's Foundation in Birmingham, Alabama.
*410 On September 17, 1960, Sam P. Hinshaw and his wife, Thelma G. Hinshaw, executed the aforementioned joint will. Item 2 provided:
"2. We and each of us have agreed and do hereby agree, will, devise and bequeath at the death of the last survivor of the undersigned, any and all property held by the last survivor after the payment of any and all debts, as provided hereinabove all the rest and residue of our estates, if there be any after the last survivor has used, sold or otherwise disposed of our property as the survivor is authorized to do hereinabove, to the First National Bank, Scottsboro, Alabama, as trustee, the residue of our estates, if there be any, to be held by said bank and investing as it deems best, and from the income therefrom and the corpus of said residue, said First National Bank, Scottsboro, Alabama, as such trustee is required to pay to the Baptist Children's Home at Troy, Alabama, and to the Crippled Children's Clinic [changed later to Foundation], at Birmingham, Alabama, the sum of One Hundred ($100) Dollars each and every year to each of said institutions, in memory of the undersigned."
The joint will made no provision for the heirs or next of kin, of either Mr. or Mrs. Hinshaw, in any form. The Hinshaws were childless and their next of kin consists of siblings, nieces and nephews.
Mr. Hinshaw predeceased his wife. Subsequent to Mr. Hinshaw's death, Mrs. Hinshaw executed a codicil to her last will, which stated in substance that inasmuch as the First National Bank of Scottsboro, named as trustee originally, had not formed a trust department, she appointed W. R. Hinshaw as successor trustee of the trust set up in Item 2. No other change was made by this codicil. Mrs. Hinshaw died in December, 1974, and her will was admitted to probate in March, 1975. The Hinshaw heirs brought the declaratory judgment action in August, 1975.
It was the position of the Hinshaw heirs that the purported trust for the benefit of the Crippled Children's Foundation in Birmingham and the Baptist Children's Home in Troy, as created under the Hinshaws' joint will, was invalid and the trust property, therefore, descended to and vested in the Hinshaw heirs. The Baptist Children's Home in Troy asserted the validity of the trust, as did the Crippled Children's Foundation, which also asserted a counterclaim asking the court, in the event of surplus trust funds, over and above $100 per year each as provided in the will, to divide the entire net income from the trust between the Foundation and the Baptist Children's Home.
The trial court determined that a valid charitable trust was created by the joint will and that the beneficiaries were the Foundation and the Baptist Children's Home. It directed the trustee to pay each of these two charitable institutions $100 per year, but further held that any excess or surplus trust property belonged to the Hinshaw heirs. The Foundation appealed from this judgment.
The property involved consists of some 300 acres of land, some of it cultivatable, and some of it "mountain" land. It was estimated to have a value of approximately $100,000. There is no personal property of any significance.
Both sides to this controversy assert that it is obvious that the trust will produce much more than $200 per year, which the Hinshaws directed the trustee to pay to the two charities. Therefore, the heirs argue that any amount in excess of a fund sufficient to produce this $200 per year, plus cost of administration, should be divided among them. The charities, on the other hand, argue that whatever amount the trust estate produces should be divided equally between them.
It is this court's responsibility to ascertain and give effect to the intention of the testator. It is that intent which controls the construction of a will, and such intention is to be arrived at by reference to the entire document, read in light of the circumstances under which the will was written. Perdue v. Roberts, 294 Ala. 194, *411 314 So.2d 280 (1975); Sellers v. Sellers, 270 Ala. 173, 117 So.2d 386 (1960).
Before considering the language of the Hinshaw will itself for purposes of construing it, it might be helpful to restate some of the general rules applicable to such cases.
There are several rules of construction which have been developed to aid courts in their search for the intention of the testator, some of which are applicable here. First, charitable gifts are viewed with particular favor and every presumption, consistent with the language of the instrument, should be employed to sustain them. Village of Hinsdale v. Chicago City Missionary Society, 375 Ill. 220, 30 N.E.2d 657 (1940). This court has said, as Justice Maddox pointed out in his dissent in Baxley v. Birmingham Trust National Bank, Ala., 334 So.2d 848 (1976):
"In Russell v. Allen, 107 U.S. 163, 167, 2 S.Ct. 327, 330, 27 L.Ed. 397 (1882), the Supreme Court of the United States said:
"`. . . [T]rusts for public charitable purposes are upheld under circumstances under which private trusts would fail.'" (334 So.2d at 855)
One court has stated the rule thusly:
". . . [G]ifts to charitable uses are favored and are to be construed by the most liberal rules that the nature of each case, as presented, will permit, rather than that the gift should fail and the charitable purpose of the donors be not accomplished. . . ." Quinn v. Peoples Trust & Savings Co., 223 Ind. 317, 60 N.E.2d 281, 286 (1945).
Secondly, absent some contrary intention which is so plain as to compel a different conclusion, it is presumed that the testator intended to dispose of his entire estate and did not intend to die intestate as to any portion of his property. First Church of Christ v. Watson, 286 Ala. 270, 239 So.2d 194 (1970). Particularly where the residuary clause is involved, the law presumes the testator intended to dispose of his entire estate. First National Bank of Birmingham v. Klein, 285 Ala. 505, 234 So.2d 42 (1970)
Applying these general rules to the instant case, it seems clear that the Hinshaw will clearly indicates that the underlying intent of Mr. and Mrs. Hinshaw in disposing of their property was charitable in nature. By Item 2 of their will, they direct that any and all property held by the last survivor, if there be any, is devised and bequeathed to the trustee, with directions that the residue of the estate, if there be any, should be invested and that the income therefrom, and the corpus of said residue, should be used to pay each of the two named charities the sum of $100 each year.
The will involved in Quinn v. Peoples Trust & Savings Co., supra, contained an item which provided that all the residue of the testatrix' estate should be paid over to a trustee which was directed to set up a trust fund to be used for the college or university education of children of employees of the Pennsylvania Railroad Company. The will said expressly that ". . . This is done by me in memory of and in honor of my deceased brother . . ." (60 N.E.2d at 283), who was an employee of that railroad company. The provision went on to say that only one child should receive the benefits of the trust at one time, and that the amount to be paid the recipient of the trust ". . . shall not exceed eight hundred dollars ($800) per year and shall not be paid to any one person for more than four years." (60 N.E.2d at 283)
In that case, the heirs of the testatrix argued that, if the trust was valid, they were entitled to all sums over and above $800 per year produced by the trust fund. They also argued, as do the heirs in the instant case, that the fact that the will said that the trust was established in memory of the brother of the testatrix, that such language indicated that the testatrix' purpose was not charitable, but was intended as a memorial to her brother. In disposing of the last contention, the court said:
". . . This makes no difference. The true test of a public charitable trust is the object sought to be attained, and not the motive of the donor. Restatement *412 of Law of Trusts, § 368d, p. 1142. . ." (60 N.E.2d at 285)
The court framed the issue to be decided as follows:
". . . Did she [testatrix] intend that over half of her property, or the income therefrom, should go to the remote heirs who are plaintiffs in this action, or did she intend that the entire residue of her estate should be devoted to the education of children of employees of the Pennsylvania Railroad Company. . . it seems to us we cannot read into the will any intent upon her part to have the larger part of her estate pass to appellants. She says specifically that `the remainder . . . shall be used to promote college or university education of children of employees of the Pennsylvania Railroad Company * * *.' This means all of the remainder. . . . At no place in her will does she mention the plaintiffs in this action. . . . nothing was given to them by the terms of this will. Had she wanted them to have a part of her estate she could easily have so provided. So it is our conclusion that she had no intent to leave any part of her estate to appellants. Any other conclusion means that she died intestate as to part of her estate, and a conclusion resulting in partial intestacy is to be avoided if possible. [Citations omitted]" (60 N.E.2d at 286)
Such we believe is the case here. The Hinshaw will indicates that it was their intention to leave all of the residuary estate in trust for the benefit of the named charitable institutions. No restrictions as to the use which these charities are to make of such is prescribed. They did not mention any of the plaintiffs in their will. Obviously, they could have done so had they wished. The will did specify that $100 per year was to be paid to each charity and that the corpus could be invaded if necessary to reach that annual payment. What disposition then should be made of the surplus, if the corpus produces in excess of $200 per year, after cost of administration? This question, too, must be resolved in a manner most likely to coincide with the intentions of the testator. What would the Hinshaws have provided had they anticipated that the residue of their property would produce more than the amount specified to be paid to the charities? In his treatise, Professor Scott states:
"In framing a scheme as to the disposition of the surplus the court will attempt to carry out the general purpose of the testator. . . ." Scott on Trusts (3d ed. 1967), Vol. IV, § 400.
He goes on to say that sometimes the courts can best effectuate the intention of the testator by providing that larger sums be paid to the same number of beneficiaries, and at other times, by providing that a greater number of recipients be included.
The Connecticut Court has held that once an underlying charitable intent has been found, it is the duty of the court to effectuate that intent, saying:
". . . [I]t has been established that a trustee, in fulfilment of its duty to give effect to the testator's intentions as apparent from the will, may use surplus income to bestow upon the charities named additional benefits in proportion to their original shares. Hoyt v. Bliss, 93 Conn. 344, 353, 105 A. 699 . . ." Hartford National B. & T. Co. v. Billings P. Learned Mission, 22 Conn.Sup. 409, 174 A.2d 49, 52 (1961).
This concept is not new in the law. In Attorney General v. Minshull, 4 Ves.Jun. 12 (1798), a testator left his property in trust, specifying that a specific amount of income (40 shillings a year) should be used to buy coats for poor men and women in a particular parish, and that any excess should be used to place poor children as apprentices at a cost not in excess of 10 per child. When it developed that poor children could not be placed for that amount, a surplus developed. When the heirs of the testator claimed the surplus, the court rejected their claim and held that the testator intended the whole income devoted to charity. In that case, the court directed the trustee to expend the surplus on other charities.
*413 We need not go so far in this case. The object of the Hinshaws' bounty are clear. They are the two charities named in their will. The bequest was not limited to a specific purpose. We think their intent was that any amount in excess of that specified in the will which the trust produced should be divided equally between those two named charities. See Trustees Stewart Common School Fund v. Lewis, 234 Ky. 286, 28 S.W.2d 27 (1930).
To adopt the position urged by the Hinshaw heirs would be to hold that the Hinshaws died intestate as to the major portion of their property. This would be to disregard long-established rules of law which compel the opposite holding. The judgment appealed from is affirmed in holding that a valid trust was created by the Hinshaw will and that the beneficiaries thereunder were the Crippled Children's Foundation and the Baptist Children's Home at Troy.
Although the Baptist Children's Home did not participate in the appeal of this case, its interest is identical to that of the Crippled Children's Foundation, which asserted the position of both charities. The judgment of the trial court directing that any surplus or excess trust property belonging to the Hinshaw heirs affects both charities. It is that holding which we reverse. Isay v. Cameron, 285 Ala. 164, 229 So.2d 916 (1969); City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276 (1936).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BLOODWORTH, MADDOX, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., and FAULKNER, J., dissent.
FAULKNER, Justice (dissenting).
I dissent.
Although called a joint will by the testators, the will in this case is not a joint will. A joint will is a testamentary instrument executed by two or more persons pursuant to a common intention to dispose of their several interests in property owned by them in common, or of their separate property treated as a common fund to a third person. Ginn v. Edmundson, 173 N.C. 85, 91 S.E. 696 (1917). I do not find any evidence that Mrs. Hinshaw owned any property to create a common fund. Therefore, in reality, Mr. Hinshaw devised his separate estate to Mrs. Hinshaw for life, with a limited power of appointment. From the residue he created a testamentary trust for the benefit of Baptist Children's Home, and Crippled Children's Clinic limited to $100 per year for each beneficiary. This, he said, could be paid from income or corpus.
What happens to the property over and above the amount necessary to pay the charities $100 per year? The authorities, too numerous to cite, hold that property not disposed of by will passes under the statute of descent and distribution. In my opinion, the excess of the charitable bequests descend to Mr. Hinshaw's heirs.
It is obvious that Mr. Hinshaw only gave a token bequest to the charities. It would have been a simple matter to dispose of the entire residue to them, had he desired to do so. Yet, he capped the bequest at $100 per year.
Finally, Mrs. Hinshaw's appointment of a successor trustee is beyond her authority, because she had only a limited power of appointment. However, the trust will not fail because the court can appoint a successor. If I were a title examiner, I would refuse to pass on any conveyance or real estate investment made by the trustee appointed by Mrs. Hinshaw. That trustee does not have legal authority to sell or convey property.
In my opinion the trial court correctly construed the will.
TORBERT, C. J., concurs.